# STATE OF LOUISIANA }
## Parish of Washington

Twenty-Second Judicial District Court ___JANUARY_____ Term, 2006

The Grand Jurors of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Washington, in the name and by the authority of the said State, upon their oath find and presents:

LAKEISHA SHANAE ADAMS    DOB: 06/17/1987.   SSN: 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
127 LIBERTY DR, BOGALUSA, LA. 70427-

Late of the Parish of Washington, on the 5th day of December, in the year of our Lord, two thousand and five, in the Parish of Washington, aforesaid, and within the jurisdiction of the Twenty-second Judicial District Court of Louisiana, for the Parish of Washington:

COUNT 1
R.S. 14:30.1 SECOND DEGREE MURDER, by killing J. A. in the second degree.

contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same.

_____
District Attorney, 22nd Judicial District of Louisiana

NO. _____

### STATE OF LOUISIANA
Versus

LAKEISHA SHANAE ADAMS

### INDICTMENT FOR

R.S 14:30.1 SECOND DEGREE MURDER

A TRUE BILL

_____
Foreperson of the Grand Jury

A True Copy of Original
This _____
_____
By. Clerk of Court

Exhibit 1

STATE OF LOUISIANA          22ND JUDICIAL DISTRICT
VS. 06-CR1-94104            PARISH OF WASHINGTON
LAKEISHA ADAMS             STATE OF LOUISIANA

## COMMITMENT

To: Robert Crowe, Sheriff of the Parish of Washington, to the
keeper of the Louisiana State Penitentiary ——— Greetings:

Whereas, by a decree of the Honorable Twenty-Second

Judicial District Court of the State of Louisiana, in and for the Parish

of Washington, **LAKEISHA ADAMS** has been adjudged guilty of

2ND **DEGREE MURDER** and sentenced by said Court to

imprisonment at Hard Labor for the term of **LIFE IMPRISONMENT**

**WITHOUT THE BENEFIT OF PAROLE.**

You are therefore hereby commanded to convey the said

**LAKEISHA ADAMS** to the State Penitentiary at Angola, Louisiana

and there Deliver **LAKEISHA ADAMS** with this warrant, to the

keeper of said Penitentiary, who is hereby authorized and

commanded to receive and keep **LAKEISHA ADAMS** in safe

custody for and during said term of **LIFE IMPRISOMENT WITHOUT**

**THE BENEFIT OF PAROLE.**

And this shall be yours and his warrant for so doing.

Witness the Honorable William Burris
Judge of our said Court, my official
Signature and seal of office at
Franklinton, Louisiana this the
30th day of MARCH, 2009.

Lorrie Price, Deputy Clerk

A True Copy of Original
This
Clerk of Court

Exhibit 2

STATE OF LOUISIANA                         22ND JDC
VS.06-CR1-94104                             STATE OF LOUISIANA
LAKEISHA ADAMS

### Statement By The Clerk of Court
### C.CR.P. ART 892

I.   Name and Address of Judge Participating in Case:
     Hon. WILLIAM BURRIS, District Judge
     Courthouse Building
     Franklinton, La  70438

II.  Name and Address of District Attorney or Assistant District
     Attorney Participating in Case:
     GREGG BRIESE
     Assistant District Attorney
     905 Pearl Street
     Franklinton, La 70438

III. Defendant pled guilty and waived his right to appeal.

IV.  Documents Attached:
     A. Certified Copy of Indictment or Bill of Information
     B. Certified Copy of Minutes of Sentencing

Franklinton, Louisiana....this the 30th day of MARCH, 2009.

_Lorrie Price_

Lorrie Price, Deputy Clerk
Washington Parish

Exhibit 3

AUGUST 11, 2008

THE TWENTY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE PURSUANT TO PREVIOUS ASSIGNMENT. PRESENT HONORABLE, PATRICIA T. HEDGES, DISTRICT JUDGE PRESIDING, WALTER REED, DISTRICT ATTORNEY, MICHELLE WATSON, DEPUTY CLERK OF COURT, EDGAR "OZZIE" ASSMAN, OFFICIAL COURT REPORTER AND MIKE BYRD, DEPUTY SHERIFF. WHEREUPON, THE FOLLOWING MATTERS WERE TAKEN UP AND DISPOSED OF AS FOLLOWS, TO-WIT:

STATE OF LOUISIANA                                    CASE #: 06-CR1-094104

VS                                  CHARGE:

LAKEISHA S ADAMS                    2ND DEGREE MURDER

AUGUST 11, 2008                     PATRICIA T. HEDGES

THIS CAUSE CAME ON FOR A MOTION FOR WAIVER OF TRIAL BY JURY.  PRESENT, LEWIS V MURRAY III, ASSISTANT DISTRICT ATTORNEY, BARRY BOLTON AND ALLEN MYLES, ATTORNEYS FOR THE DEFENDANT AND THE DEFENDANT, LAKEISHA ADAMS.

AT THIS TIME, MR MURRAY NOTED THE DEFENDANT PREVIOUSLY ENTERED A PLEA OF NOT GUILTY AND NOT GUILTY BY REASON OF INSANITY.  PURSUANT TO SANITY COMMISSIONS BEING PREVIOUSLY FILED, THE DEFENDANT WAS THEN EVALUATED BY THE DOCTORS.  AS OF THIS DATE, THE DEFENDANT HAS BEEN DETERMINED BY THE COURT TO BE COMPETENT.

IN RESPONSE TO TODAY'S MOTION, THE COURT ADVISED THE DEFENDANT OF HER RIGHTS. FURTHERMORE, AFTER A BRIEF COLLOQUY BETWEEN THE COURT AND THE DEFENDANT WHEREIN THE DEFENDANT ACKNOWLEDGED HER RIGHTS, THE DEFENDANT HEREBY ADVISED SHE WISHES TO WAIVER HER RIGHT TO A TRIAL BY JURY.

THIS MATTER WAS TAKEN UP AND SUBMITTED TO THE COURT AND THE COURT FINDS THE DEFENDANT HAS KNOWINGLY AND VOLUNTARILY MADE HER DECISION TO WAIVE HER RIGHT TO A TRIAL BY JURY. THE COURT HEREBY GRANTS THE DEFENDANT'S MOTION AND ADVISED THIS MATTER WILL BE SET FOR JUDGE TRIAL OCTOBER 29 - OCTOBER 31, 2008.

MR MURRAY NOTED, FOR THE RECORD, THE STATE HAS NOT RECEIVED ANY REPORTS BY THE DEFENSE THAT WOULD FALL UNDER THE ONGOING REQUEST FOR DISCOVERY.

THE COURT ADVISED DEFENSE COUNSEL THAT THEY ARE TO PROVIDE THE STATE WITH ANY REPORTS ISSUED BY EXPERTS, IF THEY EXIST.

THE COURT HEREBY ORDERS A SANITY COMMISSION FOR EXAMINATION AS TO THE COMPETENCY OF THE DEFENDANT AT THE TIME OF THE INCIDENT.  THE COURT FURTHER ORDERS EITHER SIDE TO PREPARE AND FILE A WRITTEN MOTION TO THIS EFFECT AND UPON PRESENTATION, THE COURT WILL APPOINT THE SAME DOCTORS AS USED IN PREVIOUS EVALUATIONS.

Exhibit 4

December 8, 2008

THE TWENY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE PURSUANT TO
PREVIOUS ASSIGNMENT. PRESENT HONORABLE, PATRICIA T. HEDGES, DISTRICT JUDGE PRESIDING, LEWIS
MURRAY, DISTRICT ATTORNEY, BRIAN VOLTOLINA, DEPUTY CLERK OF COURT, LORRIE PRICE, OFFICIAL
COURT REPORTER AND EDGAR "OZZIE" ASSMAN, DEPUTY SHERIFF. WHEREUPON, THE FOLLOWING
MATTERS WERE TAKEN UP AND DISPOSED OF AS FOLLOWS, TO-WIT:

STATE OF LOUISIANA                                    CASE #: 06-CR1-094104

VS                                      CHARGE:

LAKEISHA S ADAMS                        2ND DEGREE MURDER

December 8, 2008                        PATRICIA T. HEDGES

This cause came on for Sanity Hearing. Present, Lewis Murray, Assistant District Attorney, Barry Bolton,
attorney for the defendant, Lakiesha Adams.

At this time the state filed a motion for continuance, which was granted by the court.  This Sanity Hearing
is continued until February 27/March 9.

At this time the defense filed a Motion To Select Trial By Jury, which was granted by the court.

No further action was taken at this time.

_____

Exhibit 5

# The Supreme Court of the State of Louisiana

STATE OF LOUISIANA

NO.  2010-KO-1375

VS.

LAKEISHA SHANAE ADAMS

— — — — —

IN RE:  Adams, Lakeisha Shanae; - Defendant; Applying For Writ of
Certiorari and/or Review, Parish of Washington,  22nd Judicial
District Court Div. E, No. 06 CRI 94104; to the Court of Appeal,
First Circuit, No. 2009 KA 2015;

— — — — —

January 7, 2011

Denied.

JTK

BJJ

JPV

JLW

GGG

MRC

Supreme Court of Louisiana
January 7, 2011

*Rosin A. Burras*

**Deputy** Clerk of Court
For the Court

Exhibit 6

LAKEISHA SHANAE ADAMS, PLAINTIFF

VERSUS

JIM ROGES, WARDEN

LOUISIANA CORRECTIONAL

INSTITUTE FOR WOMEN, DEFENDANT

---

ON APPEAL FROM:

COURT OF APPEAL, FIRST CIRCUIT

DOCKET NUMBER:  2012-KW-0504

---

22nd JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

VERSUS

LAKEISHA SHANAE ADAMS

DOCKET NO: 06 CRI 94101

---

**LAKEISHA ADAMS' SUPPLEMENTAL
PETITION FOR POST CONVICTION RELIEF**

---

MAY IT PLEASE THE COURT:

**NOW INTO COURT** comes, Lakeisha Shanae Adams, *pro se* petitioner (hereinafter referred to as Adams) who respectively moves this Honorable Court pursuant to *LSA-C.Cr.P. Articles 924-930.8* to review her claims herein that will support that her conviction and sentence were obtained in violation of the Louisiana Constitution and the United States Constitution.

### THIS APPLICATION IS TIMELY FILED

This application falls in accordance with the statutory requirements of *LSA-C.Cr.P. Art. 930.8* in that, it is within the State's time limitation of two years after the judgment of conviction and sentence and the federal one year time limitation under *28 U.S.C.A. 2254*.

1

Exhibit 7

Post conviction provides a proper vehicle for review of these claims presented herein. These viable claims involve constitutional violations that are sufficient to establish prejudice for purpose of *"cause and prejudice"* where counsels' deficient conduct has worked to Adams' actual and substantial disadvantage by limiting her ability to redress issues, which affected the entire proceedings with errors of constitutional dimension. Because counsel failed to raise these claims in the proceedings leading to the conviction and failed to allege these claims on appeal this Honorable Court shall consider the merits of these claims. Adams has presented an exception to *LSA-C.Cr.P. Art. 930.4(F)*. Therefore, Adams' conviction and sentence must be remanded and vacated thus, a new proceeding ordered in this matter.

## JURISDICTION

Jurisdiction is proper of this Court is invoked pursuant to *Article V, § 10* of the Louisiana Constitution and *Article 930.6A* of the Louisiana Code of Criminal Procedure.

## PROCEDURAL HISTORY

On December 5, 2005, after two statements to the local law enforcement, Adams was arrest for the death of her three-month-old son, J.A[1] a violation of *LSA-R.S. 14:30;* first-degree murder. A bill of indictment was filed on January 18, 2006, charging Adams with the death of her three month old infant son, a violation of second-degree murder *LSA-R.S. 14:30.1.*[2]

Adams was arraigned on January 25, 2006, and entered a plea of *"Not Guilty"*, which was changed on June 1, 2006, to *"Not Guilty and Not Guilty by Reason of Insanity"*. A competency commission was appointed and the proceedings were suspended until a report could be made to the Court.

---

[1] In accordance with LSA-R.S. 46:1844(W), the infant victim is referenced only by his initials.
[2] Bill of Indictment

The Court heard testimony on January 31, 2007 receiving reports from Dr. Rafael Salcedo, Dr. John Thompson, Jr., and Dr. Sarah Deland, at which time the Court determined that Adams was not competent to proceed to trial due to her mental state and her lack of understanding concerning her rights. All of the psychiatrists reported that they did not have enough information to render a decision concerning Adams sanity at the time of her son's death. Adams was ultimately remanded to the Feliciana Forensic Facility for evaluation and treatment.

On April 18, 2007, the trial court committed Adams to the custody of the Department of Health and Hospital per *LSA-C.Cr.P. art. 648A(2)(a)* and be maintained in the custody of the Eastern Louisiana Mental Health System, Forensic Division in Jackson, Louisiana until she was able to comprehend the proceeding against her and assist in her defense. She remained there for one (1) year before she was deemed competent.

On April 3, 2008, another competency hearing was held with Dr. Thompson testifying. This matter was continued to June 4, 2008, when Dr. Salcedo testified and a packet from the forensic facility was presented. At this point, the Court held that Adams was competent to go to trial. On August 11, 2008, the Court ordered a sanity commission to examine Adams to determine if she was sane at the time of the crime.

Jury selection began on March 9, 2009, and opening statements were given at the end of the next day. The jury returned a verdict of guilty of second-degree murder. Sentencing was held March 28, 2009, and the Court sentenced Adams to life imprisonment without the benefit of parole, probation, or suspension of sentence. The written notice for appeal was signed April 24, 2009.

The Louisiana Appellant Project filed Adams' direct appeal and the Court of Appeal First Circuit affirmed her conviction and sentence. Adams then filed her

*pro se* Application for Supervisory Writs to the Louisiana Supreme Court, which was denied.[3]

Adams filed a Motion for Production of Documents and was denied. Adams also filed a Motion for Contradictory Hearing with District Attorney as provided under *LSA-C.Cr.P. art. 822*, the trial court denied the motion. Again, Adams filed a Motion to Obtain District Attorney file and other Public Records Pursuant to *LSA-R.S. 44:32(C)*; the motion was denied.

In addition, to the above filings Adams has repeatedly requested all the documents from her trial attorneys Mr. Barry Bolton (Hereinafter referred to as Bolton) and Mr. Allen J. Myles, and Louisiana Appellant Project attorney, Ms. Margaret S. Sollars (Hereinafter referred to as Sollars) to no avail. Adams filed an Ethical Conduct Complaint against Barry Bolton, Adams' trial counsel due to the fact that he refused to send Adams a copy of her trial file.[4] Adams received some of her trial file from Bolton but she is still missing critical documents.

The District Court of Washington Parish rendered a decision on February 27, 2012 filed with the District Court on February 29, 2012 and later served on the defendant Lakeisha S. Adams through the United States Postal Service on March 2, 2012.[5]

Court of Appeal, First Circuit rendered their decision on June 4, 2012 wherein J. Hughes, dissents in part and stated that he would grant the writ in part on the issue of defendant's choice of bench trial rather than a jury trial.

The initial Application for Post Conviction Relief was timely filed to the Louisiana Supreme Court on June 19, 2012, docket number 2012-KH-1408, in accordance with *LSA-C.Cr.P. art. 930.8* and *28 U.S.C. 2254* ; a decision has not been rendered. Appellant asks that in accordance with the criteria and procedures

---

[3] *State v. Adams*, 39 So.3d 848, 2010 La. App. Unpub. LEXIS 267 (La. App. 1 Cir. 2010); 52 So.3d 885; 2011 La. LEXIS 34, NO. 2010-KO-1375 (La. January 7, 2011)
[4] Ethical Conduct Complaint Form filed with the Office of the Disciplinary Counsel filed 5/3/11
[5] See Order for Reasons rendered by William J. Burris, District Court Judge, Division "E" dated February 27, 2012.

giving her the reasonable opportunity to prepare and litigate expeditiously a supplemental application for post-conviction relief. See *State ex rel. Hampton v. State,* 00-2523 (La. 8/31/01), 795 So.2d 1198. Adams' is an indigent offender and "*jail-house*" lawyers are attempting to file these briefs on her behalf. Due to the lack of documentation that Adams has, it has proven to be very difficult. Due to miscommunication between Adams' and her inmate counsel, the initial post-conviction that was sent was incomplete and there were a few errors in the brief. Please accept this supplemental brief in place of the current one that was filed on June 19, 2012. The claims remain the same; the errors were in the arguments. This brief is as accurate as Appellate can file it at this point with no access to her transcripts and other documentation. The lack of knowledge and understanding in the performance of an Inmate Counsel Substitute who are seeking judicial review for an offender in the courts cannot be objectively reviewed if the claims that are originally presented are not completely researched and properly sought.   The Department of Public Safety and Corrections have not sought to rectify the problems that exist and therefore are denying offender's "meaningful" access to the courts. The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Appellant has neither of these options, but she prays that the Court will accept this supplemental application for post-conviction so that justice can prevail.

### STATEMENTS OF THE CASE

The statement of the facts and facts in part are based on prior briefs and writs, due to the fact Adams has been unable to obtain the pre-trial, trial, and sentencing transcripts to know exactly who testified to what information, other documents, and mental health history.

Furthermore, Adams has been unable to obtain the District Attorney's file, her trial and sentencing transcripts, voir dire, and bill of indictment. Therefore, Adams is filing her application for post conviction relief as required by ***State ex rel. Bernard v. Criminal District Court***, 653 So.2d 1174, 1995 La. LEXIS 1141, No. 94-KH-2247 (La. 1995). In accordance with ***LSA-R.S. 46:1844(W)***, the infant victim is referenced only by his initials.

On December 5, 2005, Bogalusa Police Department responded to a 911 call from 1501 North Roosevelt Street where Adams stated that someone had killed her three-month on infant. Adams told the 911 operator that she *"went outside to throw some trash away and they had a scarf over their face and they made me stay outside...They wouldn't let me in the house. The door was locked...When I came in I couldn't find him. I looked all over the place and found him in the dryer."*

Sgt. Tyson was one of the first responding officers who found Adams in the middle of the street screaming that someone had killed her baby. After entering the residence, Sgt. Tyson found the baby's body on the couch. Sgt. Tyson could feel the heat radiating from the baby's body and asked Adams what happened and she said that two men came to the house, entered it, and locked her out when she was emptying the trash.

After a short period of time Sgt. Tyson advised Adams, from memory, of her rights and Tyson's placed Adams in the back of the police unit. He denied her family access to her from this point on, making all involved believe she was under arrest.

After Sgt. Trevalon took the 911 call, he went to the residence and helped to secure the scene. Sgt. Trevalon escorted the paramedic Jeff Wood and EMT Brandon Crow to check the status of the child. Paramedic Wood advised that the child had expired and there was nothing he could do.

6

Det. Miller was called to the scene, upon arrival PFC Phelps and Capt. Smith observed the infant baby boy in a seated position on the sofa. The baby had burns over most of his body. According to Det. Miller's investigative narrative, Adams went outside to put some trash in a can and her one-year ran out the house. Adams stated that when she went to go back into the house, she discovered that the door was locked, leaving her infant inside, she ran down the street to an aunt's house, but on one was home. Upon arriving back Adams stated that the door was open and that she saw someone running from the house, dressed in all black. Adams stated that she heard something "knocking" in the dryer and when she went to check she discovered that someone had put the baby in the dryer. Adams stated that she got the baby out of the dryer and put him on the couch. Det. Miller's observed the dryer to be open with several clothing items partially in the dryer with blood on them.

According to PFC Phelps, once Adams arrived at the detectives' office she was advised of her rights, not with a written waiver, but from his memory. Adams was interviewed once she arrived at the detectives' office by Det. Sorrell and PFC Phelps who did not think it was important to record Adams' first two statements. After this, Adams signed the rights form and advised she wanted to talk to officers, that she understood her rights, and did not want an attorney. During questioning, she was asked if she was taking the medication from the prescription bottles found at her residence in her name (Phenergan, Lexapro, and Hydrocodone), and she answered yes. The questioning continued.

Adams told the officers that she was in the residence with her two children. J.A. was lying on a toddler bed while Adams and her one-year-old, Chantaisa, was lying on the big bed. Adams stated that she walked outside with Chantaisa who had run out the open door. Hearing a noise and Adams turned to see that the door was closed and she could not open the door because it was locked, so she ran to her

aunt's house up the street to get help, but on one was home. Adams stated she stayed at her aunt's residence for about 20 minutes, but when she was returning to her home, she saw a person running up North Roosevelt Street dressed in all black and that they ran around the curve. Adams stated that she could hear a knocking noise coming from the back of the house. When Adams went to check on her son, he was not in the toddler bed, so she proceeding to go to the knocking sound in the back of the house where she discovered that someone had placed her son in the dryer.

PFC Phelps advised Adams that there were discrepancies in her story. Then Adams stated that her son would not stop crying so she wrapped him in a blanket and placed him in the dryer to get him to be quiet. Adams could not tell PFC Phelps when or how long her son was in the dryer and when she removed him from the dryer she could not wake him up, at which point Adams called 911. When asked if she had anything to add, Adams stated, "I never meant to hurt him."

Sgt. Sorrell Supplemental Narrative stated that Adams told detectives that J.A. was premature and he was delivered at 7 months old. Adams stated that J.A.'s father, Montrell Jones, does not help financially support his son and that his girlfriend and girlfriend's sister attacked her (Adams) at a stop sign in her car and stabbed her severely several times just months before this incident.

Adams admitted when asked about prescription bottles at the scene that she was currently under the care of Dr. Jei Jei Feinberg, who had prescribed Lexapro for depression, Hydrocodone for pain due to the surgery she received after being stabbed, and Phenergan for nausea. Adams also stated, "I hate that medicine." Adams also told detectives that she had recently taken J.A. to the hospital due to a breathing complication.

Captain Culpepper conducted a videotaped statement where Adams allegedly confessed to putting the baby in her dryer because the baby would not be

quiet. According to Det. Sorrell, Adams confessed to putting the baby in the dryer on two occasions. Sgt. Sorrell placed Adams under arrest for first-degree murder of her infant son J.A.

## ASSIGNMENT OF ERRORS

### Claim No. 1

Adams' rights were violated when the trial court continuously denied her request for a copy of the complete transcripts and the District Attorney's File. In effect, denying her rights to judicial review, due process, and the equal protection clause which is guaranteed by the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, § 2, 19, and 22 of the 1974 Louisiana Constitution.

### Claim No. 2

Adams' statements to police were not free and voluntary. Then the trial court erred in denying the motion to suppress Adams' statements, which violated her Constitutional rights.

### Claim No. 3

Adams was insane at the time of the offense and did not know right or wrong at the time of the crime or after the crime; therefore, negating the verdict of second-degree murder.

### Claim No. 4:

Adams was denied her right to effective and adequate assistance of counsel at trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and guaranteed by Article 1 Section 13 of the 1974 Louisiana Constitution.

## LAW AND ARGUMENT

### Claim No. 1:

Adams' rights were violated when the trial court continuously denied her request for a copy of the complete transcripts and the District Attorney's File. In effect, denying her rights to judicial review, due process, and the equal protection clause which is guaranteed by the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, § 2, 19, and 22 of the 1974 Louisiana Constitution.

The 5th Circuit established a two-part standard for determining whether an incomplete record entitles a defendant to a new trial. *See United States Court Of Appeals For The 5th Circuit v. Henry Silva,* 559 F.2d 1303; 1977 U.S. App. LEXIS 11368. (9/28/77). Under part two, Pierre's appeal counsel was not counsel representing her at trial, so prejudice is not required. *Upshaw, supra* at 1222-1224.

Further, the bench conference on the waiver was not recorded and the substance thereof remains an utter mystery. See *United States v. Gieger*, 190 F.3d 661, 1999 U.S.App. LEXIS 23134, (9/24/99)(bench conferences.) This case is no different. The missing record portions are "significant and substantial." *Selva Id.* at 1306." In 28 U.S.C.S. 753(b) it states:

> "... in fact, *anything* that transpires in open court, with possible exception of reading of deposition, should be recorded by reporter. *United States v Piascik, (1977, CA9 Wash) 559 F.2d 545, cert. den. (1978) 434 U.S. 1062, 55 L.Ed.2d 762, 98 S.Ct. 1235. It is duty of court, not attorney, to see that provision of statute are complied with. United States v Garner, (1978, CA5 Ala) 581 F.2d 481." See United States v. Guadalupe Vasquez; David Vasquez, Jr., 234 Fed. Appx. 310, 2007 U.S.App. LEXIS 16895, July 16, 2007.*

The Louisiana Supreme Court's ruling was contrary to clearly established Supreme Court precedent and has not hesitated to reverse where the failure to provide a complete record of the trial has rendered illusory the constitutional right of appeal. In *Ford*, supra, the Court reversed a conviction for second degree murder and remanded for a new trial because the record of the proceeding below was incomplete observing:

> "In Louisiana, as in the federal courts, an appeal from a felony conviction is an absolute right. La. Const. art. VII, § 10 (1921); La. Const. art. V, § 5(D)(2) (1974); *COPPEDGE V. UNITED STATES*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed. 21 (1962). Without a complete record from which a transcript for appeal may be prepared, a defendant's right of appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it, which is immaterial to a proper determination of the appeal, would not cause us to reverse defendant's conviction. But where a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully recorded trial. Id. at 109-10. The critical need for a complete record is heightened where, as here, appellate counsel had no involvement at trial" See Ford, supra, 338 So.2d at 109.

The abysmal state of the record in this second-degree murder case includes **NO PRE-TRIAL, TRIAL or SENTENCING TRANSCRIPTS**, which prevented

counsel from adequately fulfilling her duty to raise all meritorious issues of appeal, thereby violating Adams' right to effective assistance of counsel guaranteed by the *Sixth* and *Fourteenth Amendments* of the United States Constitution.

Furthermore, the state of the record further prevented Adams from raising all meritorious claims in her Application for Post Conviction Relief. In addition, the state of the record prevented the Louisiana Supreme Court and the First Circuit from fulfilling its constitutional mandate to review petitioner's direct appeal. This violates of her right to judicial review and due process under the *Eighth* and *Fourteenth Amendments* of the United States Constitution and *La. Const. Art. I § 2, 19, and 22.*

It is well settled that an appellant in a criminal case has a constitutional right to a complete record of all evidence upon which his conviction was based: *"No person shall be subjected to imprisonment...without the right of judicial review based upon a complete record of all evidence upon which the judgment is based..." La. Const. Art. I § 19.* This right is necessary to implement the right to an appeal and right to challenge a conviction. In order to implement this constitutional right, the district courts are under an affirmative duty to record the entirety of trial proceeding in felony proceedings under **LSA-C.Cr.P. art. 843,**

> *In felony cases...the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders charged by the court, and objections, questions, statements, and arguments of counsel.* See, **State v. Ford,** (La. 1976) 338 So.2d 107, 108-109.

Not all pre-trial motions, responses, or rulings, have been made available to Adams and none of the pre-trial transcripts, trial transcript, or sentencing transcript has been made available to her. Adams has been denied these records repeatedly.

Adams filed a Motion for Production of Documents, in which the trial court stated, *"Per Curiam There is a procedure for petitioner to receive transcripts, previously provided for her from her appellate counsel."*[6]

Adams filed a Motion for Contradictory Hearing with District Attorney as provided under in which the trial court, *"Denied. This case has been concluded so the Discovery provisions of the Code of Criminal Procedure do not apply. C.Cr.P. Article 717 is a Pretrial Discovery Article. C.Cr.P. Article 822 is totally inapplicable."*[7]

On March 7, 2011, Adams again filed a Motion to Obtain District Attorney file and other Public Records Pursuant to LSA-R.S. 44:32(C). The Honorable Judge stated, *"Denied at this time. Movant must first make a request to District Attorney or other agency and comply with R.S. 44:3 et seq."*[8]

In addition, to the above filings Adams has repeatedly requested all the documents from her trial attorneys Mr. Barry Bolton (Hereinafter referred to as Bolton) and Mr. Allen J. Myles, and state appellant attorney, Ms. Margaret S. Sollars (Hereinafter referred to as Sollars) to no avail.

The Louisiana Supreme Court has not hesitated to reverse where the failure to provide a complete record of the trial has rendered illusory the constitutional right of appeal. In **_Ford_**, supra, the Supreme Court held that a defendant should be afforded a new, fully-recorded trial where his appellate counsel was not counsel at trial and the court reporter could not provide a transcript of the testimony at trial.

> *Without a complete record from which a transcript for appeal may be prepared, a defendant's right to appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it, which is immaterial to a proper determination of the appeal, would not cause us to reverse a defendant's conviction. But where a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the record for errors so that he may*

---

[6] Motion For Production of Documents denied 3/17/11
[7] Motion For Contradictory Hearing with District Attorney as Provided Under LSA-C.Cr.P. art. 822 denied 2/23/11
[8] Motion to Obtain District Attorney file and other Public Records Pursuant to LSA-R.S. 44:32(C) denied 3/17/11

> *properly perform his duty as appellate counsel, the interests of justice*
> *require that a defendant be afforded a new fully recorded trial.*

Sollars, who was appointed to represent Adams in her direct appeal, was not

involved in her case during trial. Sollars admitted to Adams that she had *"...no*

*transcripts, copies of motions, police reports, etc. I doubt that your trial attorney*

*has any transcripts, but he may have some other documents that should be*

*helpful"*[9] which proves that her right to appellate review has been rendered

meaningless. An appeal from a conviction is an absolute right. *La. Const. Art. VII*

*§ 10 (1921); La. Const. Art. V § 5 (D)(2) (1974).* It bears emphasis that where

denial of equal protection is the issue, it matters not, that the indigent had a

fair opportunity to present a defense and have his conviction reviewed on

direct appeal.  The unfairness born of discrimination denying equal protection

is as offensive to the Constitution as any unfairness resulting from procedural

deficiencies in the criminal system.

It has been well established that a criminal defendant has a right to a record

on appeal, which includes a complete transcript of all proceedings pre-trial and

also, at trial. In *United States v. Selva,* 559 F.2d 1303, 1977 U.S.App. LEXIS

11368, (9/28/77), the Fifth Circuit established a two-part standard for determining

whether an incomplete record entitles a defendant to a new trial:

> *The Act requires that a reporter "shall record verbatim by shorthand*
> *or by mechanical means...(1) all proceedings in criminal cases had*
> *in open court...Id. 753(b). This language is clear, and its*
> *requirements are mandatory. See, e.g., United States v. Upshaw, 448*
> *F.2d 1218, 1223 (5th Cir. 1971); Calhoun v. United States, 384 F.2d*
> *180, 183 (5th Cir. 1967). It is also established beyond any shadow of*
> *doubt that a criminal defendant has a right to a record on appeal,*
> *which includes a complete transcript of the proceedings at trial.*
> *Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d*
> *331 (1964).*
>
> *While both the Act and Hardy insure to a defendant the right to a*
> *complete record on appeal, there has been considerable litigation in*
> *this court over the effect of a failure to comply with the Act. Two*

---

[9] Margaret Sollars' correspondence 1/20/11

13

*rules have evolved. The first holds that failure to comply with the Act is not error per se and will not work a reversal absent a specific showing of prejudice – i.e., appellant must show that failure to record and preserve the specific portion of the trial proceedings visits a hardship upon him and prejudices his appeal.* **United States v. Alfonso,** *552 F.2d 605 (5ᵗʰ Cir. 1977);* **United States v. Long,** *419 F.2d 91 (5ᵗʰ Cir. 1969);* **Addison v. United States,** *317 F.2d 808 (5ᵗʰ Cir. 1963);* **Strauss v. United States,** *311 F.2d 926 (5th Cir. 1963). 4 The government {559 F.2d 1306} urges upon us this body of law as controlling our decision here. We disagree. An examination of the second body of case law reveals that a different rule obtains in cases involving new counsel on appeal. When, as here, a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, 5 even absent any showing of specific prejudice or error, is sufficient to mandate reversal.* See **United States v. Gregory,** *472 F.2d 484 (5ᵗʰ Cir. 1973) (dicta);* **United States v. Upshaw,** *supra at 1222-1224;* **United States v. Garcia-Bonifascio,** *443 F.2d 914 (5ᵗʰ Cir. 1971);* **United States v. Rosa,** *434 F.2d 964 (5ᵗʰ Cir. 1970);* **United States v. Atilus,** *425 F.2d 816 (5ᵗʰ Cir. 1970);* **Stephens v. United States,** *289 F.2d 308 (5ᵗʰ Cir. 1961). The wisdom of this rule is apparent. When a defendant is represented on appeal by the same attorney who defended him at trial, the court may properly require counsel to articulate the prejudice that may have resulted from the failure to record a portion of the proceedings. Indeed, counsel's obligation to the court alone would seem to compel him to initiate such disclosure. The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded. But when a defendant is represented on appeal by counsel not involved at trial, counsel cannot reasonably be expected to show specific prejudice. To be sure, there may be some instances where it can readily be determined from the balance of the record whether an error has been made during the untranscribed portion of the proceedings. Often, however, even the most careful consideration of the available transcript will not permit us to discern whether reversible error occurred while the proceedings were not being recorded. In such a case, to require new counsel to establish the irregularities that may have taken place would render illusory an appellant's right to notice plain errors or defects, and render merely technical his right to appeal.*

The Supreme Court held that failure of the court reporter to record defendant's entire trial required reversal of defendant's conviction in view of fact that defense counsel, who was appointed to represent defendant on appeal and who had not served as trial counsel, was unable to review substantial portion of the record for errors. **State v. Ford,** supra. See also, **United States v. Upshaw,** 448 F.2d 1218 (5ᵗʰ Cir. 1971); 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972).

*"The United States Fifth Circuit Court of Appeals has been especially vigilant in requiring a reversal, even if no particular prejudice has been alleged, when defendant's counsel on appeal is a different person from trial counsel and a portion of the transcript is unavailable."*

Furthermore, for an indigent defendant to have adequate access to the appellate process, a trial transcript must be provided by the State. ***Griffin v. Illinios***, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)

Adams filed an Ethical Conduct Complaint with the Office of Disciplinary Counsel seeking assistance in obtaining the requested documents so she could properly file her PCR.[10] Adams finally received a few documents from Bolton but NO PRE-TRIAL, TRIAL, SENTENCING TRANSCRIPT, among other documents. Adams still does not have her video statement, autopsy report, crime lab reports, and mental health records.

Since Adams is an indigent inmate and has remanded indigent, she must file her PCR and set out specific claims showing a particularized need for the documents that prove her constitutional rights were violated in accordance to ***State ex rel. Bernard v. Criminal District Court***, supra,

> *The court explained that while an indigent inmate was entitled to certain documents as of right, he could gain access to others only where a denial of his request would deprive him of a fair opportunity to present his claims. To show such a particularized need, the inmate needed to file an application for post conviction relief that set forth specific claims of constitutional errors requiring the requested documentation for support. The court noted that the inmate had identified with specificity three constitutional claims that he argued would entitle him to post conviction relief. Thus, the inmate needed to renew his request for documents in that application and it would remain for the trial court to determine whether the documents were necessary to resolve his claims fairly under either the provisions of **La. Code Crim. Proc. Ann. art. 929**, which allowed a court to grant relief summarily on the pleadings, or the provisions of **La. Code Crim. Proc. Ann. art. 930**, which allowed for an evidentiary hearing at which the court might receive authenticated records before ruling on the merits of the claim.*

---

[10] Office of Disciplinary Counsel Louisiana Attorney Disciplinary Board Ethical Conduct Complaints on Bolton 5/3/11

After the First Circuit affirmed Adams' conviction and sentence and she was forced to obtain assistance from *"jailhouse lawyers"* to assist her in filing her Louisiana Supreme Court writ and to file this PCR. The *"jailhouse lawyers"* do not have the necessary records in which to properly file Adams' PCR; but only have her direct appeal and a few documents that her trial attorney provided her. Furthermore, the *"jailhouse lawyers"* are unable to review the record because the Trial Court has repeatedly denied Adams' request for copies of the complete pretrial, trial, and sentencing transcripts and the District Attorney's file.

This is not a situation where insubstantial portions of the record are missing, but Adams has **no** transcripts, very few mental health records due to the fact she is indigent and unable to purchase the crucial document need to prove her mental health. The missing transcripts are material. Material omissions require reversal of Adams' conviction according to the *La. Const. Art. I § 19.*

The Louisiana Supreme Court has enunciated a three part standard for reviewing incomplete record in *State v. Frank*, (La. 2001) 803 So.2d 1,

1. *"Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal."*
2. *"Inconsequential omissions or slight inaccuracies do not require reversal."*
3. *"Show prejudice based on the missing portions of the transcripts."*

Adams is suffering extreme prejudice by the missing records. Had Adams possessed all transcripts she would have proven beyond a shadow of doubt that her constitutional rights were violated and that she is not guilty of the second-degree murder. Adams cannot properly litigate any of her claims. Furthermore, this has prejudiced Adams to the point she has been convicted, sentenced to life, and denied complete judicial review on direct appeal and on her collateral attack. Adams has suffered psychologically, physically, and financially which has ultimately deprived her of life, liberty, and property, which the Constitution of the United States guarantees each citizen.

16

The right of a complete record of a criminal trial sits solely with the defendant and cannot be waived by defense counsel or anyone else. See *State v. Gibbens*, 562 So.2d 457 (La. App. 3rd Cir. 1990) reversing and remanding for a new trial where the record reflected that trial court affirmatively determined that defendant himself had intelligently waived the constitutional right to judicial review. Adams did not waive her constitutional right to judicial review.

Due to Adams being denied access to her pre-trial transcripts, a complete trial transcript, that includes the jury voir dire, open and closing arguments, evidence submitted, jury instructions, all bench conferences, verdict return, and sentencing transcript, the District Attorney's file, and mental health records, her due process and equal protection clause rights, which are guaranteed by the United States Constitution and the Louisiana Constitution, has been violated. Therefore, Adams' conviction and sentence cannot stand and must be vacated, and a new fully recorded trial ordered. In the event Adams' conviction and sentence are not vacated, it is incumbent upon this Honorable Court to order the compilation of a complete record and allow her to supplement the original PCR after she has received a copy of the requested documents, i.e., jury voir dire open and closing arguments, evidence submitted, jury instructions, all bench conferences, verdict return, and sentencing transcripts, the District Attorney's file and all her mental health records so she can identify specific constitutional errors and prove the claims in this PCR and in the proceedings leading to her conviction and sentence, as required by **LSA-C.Cr.P. Art. 930.3**, the Louisiana Constitution, and the United States Constitution. Adams needs these requested documents in order to properly prepare and litigate her PCR claims, instead of attempting to recall from memory what occurred at her trial. Adams' conviction and sentence must be vacated and a new trial ordered.

17

<u>Claim No. 2:</u>

**A statement must be voluntarily and intelligently given to be admissible evidence at trial. Lakeisha Adams' statements were not free and voluntary because of her delusional state and the use of improper questioning techniques by the police; therefore, the trial court erred in denying the motion to suppress her statements.**

When a defendant is tried upon a plea of not guilty, evidence of insanity or mental defect at the time of the offense shall not be admissible, **LSA-C.Cr.P. art. 651**. Under **LSA-R.S. 14:14**, Louisiana's codification of the M'Naughten Rule, an offender is exempt from criminal responsibility only if he is incapable of distinguishing between right and wrong with reference to the conduct in question. Thus, Louisiana does not recognize the doctrine of diminished capacity absent a dual plea of not guilty and not guilty by reason of insanity. Evidence of a mental defect, which does not meet the M'Naughten definition of insanity, therefore, cannot negate a specific intent to commit a crime and reduce the degree of the offense. Consequently, in crimes requiring specific intent, diminished mental capacity is not a recognized defense. The defense established that Adams was incapable, due to her delusional state, to knowingly, intelligently, and voluntarily waive her rights. The State attempted to show through the testimony of the police officers that Adams understood what had happened when she gave her statements and she was not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. The idea of mental illness or intoxication due to her medications did not even come into play with this testimony, thus relieving the police from any responsibility or recognition that Adams was incapable of waiving her rights.  Adams statements to police were not free and voluntary because of her delusional state and the use of the improper and suggestive questioning techniques. In fact, she was found incompetent some time later and only after spending a year in treatment was she deemed competent to understand her rights. Under these

circumstances, the Trial Court erred in finding that the State had met its burden of proof with regard to the admissibility of the statements and counsel objected.

In order for an inculpatory statement to be admissible in evidence against an accused at trial, the State bears the burden of establishing beyond a reasonable doubt that the statement was freely and voluntarily made. *LSA-R.S. 15:451; State v. Glover*, 343 So.2d 118; 1976 La. LEXIS 4017; Nos. 56,812, 56,894 (La. 1976); 1977 La. LEXIS 5387 (La. 1977); *State v. Skiffer*, 253 La. 405, 218 So.2d 313 (1969). Once a trial judge has determined that the state has met its burden of proof, his decision is entitled to great weight on review. *State v. White*, supra; *State v. Hall*, 257 La. 253, 242 So.2d 239 (1970). Adams was found incompetent to stand trial and spent an entire year at a mental hospital before she was deemed competent enough to stand trial. The statement in question was given before Adams was judged incompetent and therefore should have been inadmissible.

In making this determination, we must look to the purposes behind the rule that only voluntary statements can be admitted at trial. In *Glover* we found two of these purposes to be to insure that convictions are based on trustworthy and reliable evidence, see *Blackburn v. Alabama*, 361 U.S. 199, 4 L.Ed.2d 242, 80 S.Ct. 274 (1960), and *Reck v. Pate*, 367 U.S. 433, 6 L.Ed.2d 948, 31 S.Ct. 1541 (1961)(Justice Douglas, concurring), and to guarantee that the statements were the products of defendant's free and rational choice. This latter rule was stated in *Culombe v. Connecticut*, 367 U.S. 568, 602, 6 L.Ed.2d 1037, 81 S.Ct. 1860 (1961) as follows:

> "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntaries. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and **his capacity for self-determination critically impaired,** the use of his confession offends due process. *Rogers v. Richmond*, 365 U.S. 534, 5 L.Ed.2d 760, 81 S.Ct. 735. The line of distinction is that at which governing self-direction is lost and

compulsion, of whatever nature or however infused, propels or helps
to propel the confession."

The defendant is entitled to present expert witness testimony regarding his
capacity to waive his rights and make a free and voluntary confession. *State v.*
***Bordelon***, 597 So.2d 147 (La.App. 3rd Cir. 1992); *State v. Glover, supra.* Moderate
mental retardation and low intelligence or illiteracy do not of themselves vitiate the
ability to knowingly and intelligently waive constitutional rights and make a free
and voluntary confession. However, in the instant case Adams was in no way able
to knowingly or intelligently waive her constitutional rights or make a free and
voluntary confession. The State bears the burden of proving that the mental defect
or condition did not preclude the voluntary and knowing giving of a confession.
They did not meet this burden; in fact, shortly afterward, the Judge deemed Adams
incompetent. Adams was considered incompetent from the time of her arrest until
her release from Feliciana Forensic Unit. Until the day Adams was deemed
competent, she did not understand her rights at all, much less have the ability to
intelligently waive them.

The record in this case clearly established Adams' mental illness at the time
she was arrested and gave her statements to police.  All of the forensic experts
agreed that Adams was suffering from severe depression, post-pardom depression,
and paranoia; she was treated for this and psychosis.  Some other psychiatrists
opined that Adams also suffered from posttraumatic stress disorder brought on by
the stabbing by Ms. Franklin.  Additionally, the Court found that Adams was
incompetent and did not understand her rights and she was treated at Feliciana
Forensic Unit for over a year.

Within a few minutes after the arrival of the police and some initial
questioning, Adams was placed in the back seat of the police unit where she was
unable to leave. Kept in that unit for an hour or so, Adams was not allowed to talk

to anyone before she was taken to the police station for more questioning. In the course of the trial, defense attorney's asked at what point Adams was under arrest; they stated 'after the video-taped confession'. Adams was refused access to her family and was made to believe by the arresting officers that she was placed under arrest at her residence. By this point, some of the officers, particularly Sgt. Tyson and Captain Carpenter, had decided that Adams was a prime suspect. When they left the residence, Captain Carpenter had already decided that he wanted a videotaped statement by Adams. The basis of this belief was that Adams did not shed any tears and he felt that the garbage can outside was empty. Both of these beliefs were proven wrong and were not included in Sgt. Tyson's report, as well as his claim that Miranda rights were given to Adams from his memory.

Also important was the information that the police knew that Adams was on several types of depressant and pain medications, yet no steps were made to ensure that Adams understood her rights and was competent to give a statement. Adams was asked if she was taking prescription medication and admitted that she was under the influence, yet no tests were run to ensure that her level of intoxication was at a level that would allow her to understand her legal rights. Instead, they used her incoherence to intimidate her into believing she was already under arrest and that if she cooperated with any and all statements they wished her to say, the District Attorney would "help" her. Dr. Deland provided the most insight into Adams' mental condition at that time and stated that someone suffering from a mental illness was more susceptible to suggestions than a normal person. Dr. Deland also stated that someone in Adams' mental state could appear lucid for a period of time.[1]   After the tape was made, Adams was placed on suicide watch and mental treatment was started at a local clinic several days later.

---

[1] Two of the State's expert witnesses agreed that a person can go in and out of insanity.

Even the prosecutor agreed that many leading questions were used in the videotaped interview and, as Dr. Deland noted, some questions had to be repeated and others were not answered. Thus, the failure to consider Adams' mental state and history, as well as the manner in which the videotaped interview was conducted, rendered her statements involuntary. Adams was placed in a police unit, unable to leave, for an hour after discovering her son was dead. Then she was lied to by her interrogators who gave her false information about the evidence they found. No efforts were made to determine whether Adams was in a mental state to understand, much less to waive her rights, when she was interrogated. Moreover, the setting for the interrogation had Adams "boxed in" such that she could not have asserted her rights, nor was she ever informed that she was free to leave after she was placed in the police unit. There was never an opportunity, even if Adams had been able to talk about what she was thinking and feeling. The questioning was meant only to elicit incriminating answers without any regard for what was appropriate for a person suffering, at minimum, severe depression with suicidal and psychotic overtones. As the interrogation continued, without regard to her mental state, Adams finally just agreed that that she placed J.A. in the dryer for the reasons they wanted her to say.

Under these conditions, the State had a heavy burden of proving, beyond a reasonable doubt, that the confession was voluntary; in that it was trustworthy and the product of a free and rational choice. *State v. Glover*, supra; *State v. Trudell*, supra. The trial court erred when the Judge denied the motion to suppress and the State was allowed to introduce the statements at trial. Adams' statements were not free and voluntary because the evidence established that she was psychotic and her capacity for rational thought was critically impaired. This prejudiced Adams' severely; it was stated that the confession was the most incriminating evidence against her. The outcome of trial would have considerably differed had the

confession been suppressed. The use of this confession offends due process and, as a result, this conviction should be vacated and a new trial ordered on the basis of this error.

### Claim No. 3:

**The conviction in this case cannot stand for it fails to meet the legal standard for sufficiency of the evidence. Ms. Adams met her burden of proving by a preponderance of the evidence that she was insane at the time of J.A.'s death and the State failed to prove either of the elements of Second Degree Murder.**

> *Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.* **La. Code Crim. Proc. Ann. art. 641.**

No rational trier of fact could have found that the defense failed to carry its burden of proving by a preponderance of the evidence that Adams was delusional and insane at the time she committed this crime. While it is acknowledged that great deference is ordinarily given to the trier of fact on such issues, it is submitted that the jury's decision to find that the state bore its legal burden of proof, when confronted with the overwhelming evidence submitted by the defense establishing Adams' insanity, was manifestly erroneous and reversible error occurred.

In Louisiana, a legal presumption exists that a defendant is sane at the time of the offense. *LSA-R.S. 15:432.* To rebut the presumption of sanity, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. *LSA-C.Cr.P. Art. 652* and *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27, 32. Criminal responsibility is not negated by the mere existence of a mental disease or defect. To be exempted of criminal responsibility, the defendant must show he suffered a mental disease or mental defect that prevented him from distinguishing between right and wrong with reference to the conduct in question. *LSA-R.S. 14:14*; *State v. Williams*, 346 So.2d 181 (La.1977). The determination of sanity is a factual matter. *State v. Sepulvado*, 26, 948 (La.App. 2nd Cir. 5/10/95), 655 So.2d 623, *writ denied*, 95-1437 (La. 11/13/95), 662 So.2d 465. All evidence,

including expert and lay testimony, besides the defendant's conduct and actions, should be reserved for the fact finder to establish whether the defendant has proven by a preponderance of the evidence that he was insane at the time of the offense. *State v. Roy, supra.*

Although the State bears the burden of proving that a confession or exculpatory statement is free and voluntary pursuant to **La. Rev. Stat. Ann. art. 15:451; La. Code Crim. Proc. Ann. art. 703(C)**; the prosecution is required to prove this beyond a reasonable doubt. The United States Supreme Court has held that the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary, but that the states are free to adopt a higher standard. **La. Rev. Stat. Ann. art. 15:432** presumes that the defendant is sane and responsible for his actions and places upon the accused the burden of proving the existence of a mental abnormality which, under the circumstances may have destroyed the voluntary nature of his confession, he is not required to prove a particular kind of "insanity." The legislature has not defined insanity for this purpose as it has with regard to insanity at the time of an offense, **La. Rev. Stat. Ann. art. 14:14**, and mental capacity to proceed, **La. Code Crim. Proc. Ann. art. 641.** A most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that the United States system of law enforcement should not operate so as to take advantage of a person in this fashion. *State v. Glover*, 343 So.2d 118 (La.1979). Appellant would not have had to **try** to prove that she was incompetent and did not understand her rights, the trial court ordered her to Legal Rights classes and **determined** her not competent.

Expert testimony is relevant to the issue of whether a defendant is insane, but even where experts opine that the defendant is insane, the issue is for the jury to decide. *State v. Sepulvado, supra; State v. Birdsong*, 452 So.2d 1236 (La.App. 2nd Cir.) *writ denied*, 457 So.2d 1200 (1984). Lay testimony concerning the defendant's actions, both before and after the crime, may give the fact finder a rational basis for rejecting unanimous medical opinion that the defendant was legally insane at the time of the offense. *State v. Peters*, 94-0283 (La. 10/17/94), 643 So.2d 1222; *State v. Claibon*, 395 So.2d 770 (La. 1981).

In reviewing a claim for insufficiency of evidence where an affirmative defense of sanity is raised, this Honorable Court must apply the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard requires that the Court determine whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence most favorable to the prosecution, could beyond a reasonable doubt, which the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. *State v. Silman*, supra; *State v. Peters*, supra; *State v. Nealy*, 450 So.2d 634 (La. 1984).

Defense counsel noted early on that Adams was suffering from some type of mental illness and the Court concluded that she was indeed incompetent to go to trial. The proceedings were stayed for almost two years while Adams was treated to restore her competency. Each of the examining psychiatrists for the competency hearing agreed that Adams was suffering from severe depression. Once Adams regained competency, the issue of her sanity at the time of the offense was not resolved. Other psychiatrists who treated Adams gave an additional diagnosis of postpartum depression, post-traumatic stress disorder and paranoia. Each one of these disorders causes intense psychological distress. Although, postpartum occurs after the birth of a child and post -traumatic stress disorder is marked by horrifying

25

memories, which are reoccurring causing "flashbacks". It is unclear if the post-traumatic stress disorder is caused by the repeated sexual abuse Adams experienced as a child or if it was when she was repeatedly attacked prior to Adams' arrest.

Moreover, even if the defendant was not precluded from raising this claim, the assignment of error would fall for lack of merit. The elements of Second Degree Murder are: (1) When the offender has a specific intent to kill or to inflict great bodily harm; (2) When the offender is engaged in the perpetration or attempted perpetration of a felony. The State did not meet their burden by proving either of these elements. ***Jackson v. Virginia***, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Never was it even alleged that Adams was engaged in perpetration of another felony, so the State attempted to rely on specific intent; which they failed to prove. Even if the involuntary statement was to be held against Adams, she stated clearly on the tape, "I didn't mean to hurt him!" Adams was visibly delusional and upset; yet even then, it was obvious that she had no cruel intent.

Three years after the crime, several psychiatrists were asked to determine Adams' sanity when the crime occurred. Dr. Thompson and Dr. Deland examined Adams for a second time, and Drs. Vosburg and LeBourgeois examined her one time to determine sanity. All were looking for psychotic symptoms that showed Adams was detached from reality and did not know right from wrong.

Dr. Thompson determined that the videotape and the 911 call did not reveal psychotic symptoms. He made his determinations based upon probabilities and conceded that most of the information he received came from the State's investigation. He did not talk with members of Adams' family. He was aware that Adams was treated for psychosis, had reported trying to commit suicide several

times, and exhibited paranoid behavior. Adams did not talk with him about the baby's death.

Dr. Thompson was not asked to determined diminished capacity or specific intent. Dr. Thompson agreed that experts could disagree about the medical probability of their conclusions and tried to look at things as being more probable than not, and he agreed that opinions are based on good or bad facts.

Adams was originally treated for depression and psychosis. The most significant thing for Dr. Thompson was the videotape. Most of Dr. Thompson information came from the State and he generally accepted it as true. At their first interview, Adams did not want to talk about her baby's death, nor did he talk to members of her family. He actually began his interview with Adams by stating, "Word on the street is you did this because you were jealous of the other girl having a baby for your boyfriend." All of the experts who examined her agreed that Adams suffered from major depression, that she had asked for psychological help on three separate occasions before her son's death, and that she reported some paranoid symptoms. Dr. Thompson added that a person can go in and out of sanity, but he depended on probabilities to make a judgment.

Dr. Charles Vosburg, an expert in forensic psychology, examined Adams for a sanity diagnosis over three years after the death of her son. He sat through most of Dr. Thompson's testimony prior to his testimony, and had worked with him at the forensic facility. Dr. Vosburg's method of evaluation was called "redundant validity," or looking for what is consistently repeated throughout all of the information. He concentrated on the three months prior to and after an act.

When Dr. Vosburg examined Adams and spoke with her family members on the telephone, he saw signs of depression, but no psychotic symptoms. Adams denied having any memory of doing harm to her son, but she had heard voices prior to his death. Dr. Vosburg was aware that another doctor had diagnosed

Adams with postpartum depression. Dr. Vosburg was aware that Adams had described a black car that was chasing her when she had an automobile accident a month before her son's death, and that she said she tried to commit suicide the night of J.A.'s death. Dr. Vosburg disagreed with Dr. Thompson's conclusion that this was a fake suicide because there were other medications available than the one pill bottle Dr. Thompson considered. There was no doubt in Dr. Vosburg's mind that Adams was depressed. Dr. Vosburg had only seen her one time and this was three years after her son's death.

It didn't make sense to Dr. Vosburg that Adams would put the baby in the dryer to keep him from crying when she was not trying to hurt him, especially when she said she had done it before and she was suffering from thoughts of suicide. Adams had no memory of harming her son and at times didn't think he was dead. Dr. Vosburg believed the child was well taken care of and that Adams loved him. Dr. Vosburg was also aware that Adams's grandmother said Adams wanted everything perfect for her child.

Dr. Herbert LeBourgeois worked at the forensic facility and was accepted as another expert in forensic psychiatry. Dr. LeBourgeois, too, examined Adams to determine her sanity at the time of the crime. Dr. LeBourgeois heard the previous expert testimony and examined many records. He stated that Adams met the criteria for a major depressive episode and posttraumatic stress disorder due to the attack by Franklin. Adams also reported some psychotic symptoms.

Dr. LeBourgeois agreed that he had said Adams was possibly psychotic, but she did not report hallucinations on the day of the crime. People could go in and out of insanity and that the police had provided most of the information Dr. LeBourgeois used to evaluate Adams.

Dr. Deland testified that she believed Adams was insane when the baby died. Dr. Deland examined Adams for competency and sanity. Dr. Deland was the

only woman who examined Adams, and this may explain why Dr. Deland was able to get Adams to open up more and talk. Also, Dr. Deland was the expert who made a special effort to speak with members of Adams' family, friends, and school teachers; learning of the startling changes in her personality after the birth of her son. Dr. Deland felt this was particularly important and was convinced with a medical certainty that Adams was unable to know right from wrong at the time of J.A.'s death. Dr. Deland diagnosed Adams with severe depressive episode having psychotic features and postpartum onset in partial remission. Adams' energy was focused on her children and her thoughts were so disorganized and out of touch with reality that she was unable to think logically.

Family and friends confirmed that Adams clearly showed a significant change in her behavior prior to and after J.A.'s death. High school friends describe Adams as a "bubbly" and playful person who changed into someone who isolated herself, would go into dazes, and get mad for no reason. Adams would sit in the dark and mumble to herself, and she thought everyone was against her. A teacher and a guidance counselor at Adams' school confirmed these changes.

Family members described Adams' bizarre behavior and paranoid delusions. While they were not aware of any suicide attempts, they recognized that something was badly wrong. Adams threatened family members two times with either a knife or a hammer. They testified that there was no reason for her to do this. She also wandered throughout the streets at night for no apparent reason and related instances of someone following and trying to harm her. Adams was hysterical. Armed with a knife, it took a lot of persuasion to convince Adams to let her relatives in the house when they could find no one who matched the description of her assailant. Another similar instance occurred when Adams had an automobile accident and described someone who was chasing her; the accident could not have occurred as she described.

29

Montrel Jones, the father of J.A., believed that Adams was crazy the day of the baby's death. He testified that Adams just talked crazy when she called him the whole day that J.A. died, but he knew she loved J.A. Even Ms. Franklin, who overheard these conversations, believed Adams was being truthful. Additionally, all of the witnesses, particularly the police officers, had difficulty believing a rational Adams would have put her child in the dryer to calm him down then call the police.

Dr. Sarah Deland was the last of the forensic experts to testify. The experts agreed that their opinions were only as good as the facts they were given. They also agreed that most of their information came from the police investigation. Only Dr. Deland went the extra step and spent extra time questioning members of Adams' family, friends, and school teachers. Adams' first involvement with mental health was when she was 15 and had disclosed sexual abuse. Adams became depressed during her first pregnancy, but did not receive treatment. Adams mental health really began to deteriorate after the birth of her son and several medications were prescribed.

Also, the State's doctors depended on the 911 call and the videotape to form their opinions. Dr. Deland considered these recordings, but she explained, as well as Dr. LeBourgeois, that sanity waxes and wanes. A person can appear sane for short period of time, but this appearance cannot be maintained. Furthermore, in Adams' delusional state, she was more susceptible to answering leading questions, the technique used in the videotape. The police had informed Adams of things that were not true. We have no idea what was said prior to the tape; she was questioned for hours and tired and worn down.[2] Dr. Deland was less concerned with the tape and more concerned with Adams' change in personality. Her children were always

---

[2] Sgt. Tyson said he could feel heat radiating from the body even though the coroner's report said rigor motis had set in one of the arms. Tyson also claimed there was nothing in the garbage can even though it clearly contained some things. (Record 677).

taken care of, but Adams did not take care of herself. Adams often was not groomed and remained in pajamas all day. This was totally out of character for Adams. Dr. Deland also stated she had turned down cases because she was not convinced that her testimony would be helpful.

The defense proved by a preponderance of evidence that Adams was insane at the time of the offense. In light of the totality of the evidence adduced, no rational trier of fact could have found beyond a reasonable doubt that the defense had not met its burden. The overwhelming nature of the expert testimony fully supported by the lay testimony of Adams' family and friends, as well as third parties, left no room or support for the jury's verdict. It is incumbent upon this Court to conclude that the jury acted irrationally in the face of the evidence. As such, the evidence was insufficient to find Adams guilty of Second Degree Murder at the time of the offense and a reversal of her conviction is required.

When she was in jail, Adams was placed on suicide watch, taken to the mental health clinic, and prescribed antipsychotic drugs. After she was found incompetent, Adams continued treatment with antipsychotic medication and reported having hallucinations. At the hospital Adams was paranoid and hyper-vigilant. Adams became particularly excited when one of the attendants touched her hair and she thought they were doing voodoo on her.

When Adams was interviewed, she had trouble putting her thoughts together and staying on topic. Adams also said that the warden struck her and was sending people to mess with her, that she was receiving messages from God, and she wasn't convinced her son was dead. At the second interview Adams was much better and accepted the fact that her son was dead. Adams ability to concentrate and her memory were much improved.

Dr. Deland diagnosis of Adams was major depressive episode severe, with psychotic features, and with postpartum onset in partial remission. Dr. Deland also

thought Adams may have been dealing with posttraumatic stress disorder stemming from the attack by Franklin with a knife. Dr. Deland had to really work hard to get Adams to talk, particularly about the voices and hallucinations. Adams reported she was scared the day of J.A.'s death and took a lot of medication and she thought something bad was going to happen. Adams didn't remember putting her son in the dryer.

This was a very difficult case but based upon the delusions and the psychotic features, Dr. Deland determined that Adams could not distinguish right from wrong at the time of J.A.'s death. All of Adams' energy was focused on her children and not on taking care of herself. Adams was unable to think coherently and her thoughts were so disorganized and out of touch with reality that she was unable to think logically. Adams was unable to contemplate the issue of right or wrong. Dr. Deland believed this with a medical certainty.

Dr. Deland reviewed the videotaped confession and believed that someone suffering from a mental illness was more susceptible to suggestions than a normal person. Dr. Deland agreed that Adams had not reported the hallucinations to the other doctors, but she interjected that she had to work a long time to elicit these answers. All of the doctors agreed on the depression diagnosis.

Dr. Deland believed that Adams showed psychosis by the change in the person she was before, her hallucinations, and her withdrawal from others, and her deep depression. Adams was not able to think rationally. Dr. Deland declared that mental illness waxes and wanes and it is not uncommon for the mentally ill to think clearly for a short period of time, but it cannot be maintained for long. Dr. Deland agreed that remorse was evident on the videotape, but it was not evident at the time of the crime. The tape showed that some questions had to be repeated and that Adams never answered all of the questions. The event itself spoke of a

disturbance, but lucid intervals happen all the time and can change within 30 minutes. The videotape did not change Dr. Deland mind.

The trial court erred by denying the Motion to Suppress the video statement. Had the statement been suppressed, the outcome of this trial would have been very different. The video statement was not freely or voluntarily given and its introduction into evidence prejudiced Adams greatly.

As in *State v. Peoples, 383 So. 2d 1006 (La. 1980)*, the Louisiana Supreme Court has repeatedly held that although insufficiency of evidence is not a question of law and may not be reviewed, a total lack of evidence is a question of law and may be considered, provided that an assignment of error properly perfected presents all the evidence so that we may determine whether there is a total lack of evidence to prove a {383 So. 2d 1009} crime or an essential element thereof. *State v. Douglas, 278 So.2d 485 (La. 1973); State v. Hochenedel, 253 La. 263, 217 So.2d 392 (1968); State v. McLean, 216 La. 670, 44 So. 2d 698 (1950); State v. Drew, 202 La. 8, 11 So.2d 12 (1942); State v. Singley, 195 La. 519, 197 So. 218 (1940)*. Even though imperfect expressions of the rule have appeared in some of our opinions, in actual practice this Court has not departed from this rationale.

<u>Claim No. 4</u>:

**Adams was denied her right to effective and adequate assistance of counsel at trial as guaranteed by the 6th and 14th Amendments of the United States Constitution and guaranteed by Article 1 Section 13 of the 1974 Louisiana Constitution.**

The standard of review for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984). The defendant must show: 1) counsel's performance is ineffective only when it can be shown that counsel made errors so serious that he or she was not functioning as "counsel" guaranteed by the **Sixth Amendment**, and adopted by the State of Louisiana in *State v. Fuller*, 454 So.2d 119 (La. 1984). To show

*Strickland* prejudice, a defendant must demonstrate that counsel's errors were so serious to "render the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The defendant must show that the attorney's performance was deficient, and that the deficiency prejudiced him. There must be a showing that there is a reasonable probability that counsel's error undermined the proper functioning of the adversarial process. *State v. Ratcliff,* 416 So.2d 528, 531 (La. 1982).

The *Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution* guarantee a defendant in a criminal prosecution the right to be represented by counsel, in *Powell v. Alabama,* 53 S.Ct. 55 (1932), the United States Supreme Court recognized that the right to counsel is the right to effective counsel. Since *Powell*, the Supreme Court has expanded the scope of that right to effective assistance of counsel. Indeed, the right may be a defendant's most fundamental right because it is essential to his or her ability to assert any other right he or she may have. *United States v. DeCoster*, 487 F.2d 1197 (DC Cir. 1973). Furthermore, the defendant is guaranteed that such counsel will serve effectively and competently, and will perform certain duties necessary to adequately represent his client's interest. To deny a defendant effective assistance of counsel has been viewed as akin to denying him any assistance at all. Generally, an ineffective assistance of counsel claim is best addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. This is because PCR creates the opportunity for a full evidentiary hearing under *La. Code Crim. Proc. Ann. art. 930.*

Thus, when the grand jury is impaneled in an unconstitutional manner and counsel fails to properly assert and argue the Motion to Suppress, the error is so egregiously prejudicial that ineffective assistance of counsel should be presumed.

**ISSUE #1- ADAMS WAS NOT ALLOWED TO BE INVOLVED IN HER OWN DEFENSE**

Prior to the trial in this matter Adams had very little contact with Bolton regarding his representation of her. He consulted mainly with her family, who is also ignorant to the rights of the accused, and only visited with Adams a handful of times in the three years she was awaiting trial. She was informed that the Grand Jury had indicted her on Second Degree Murder, rather than the initial charge of First Degree Murder, from a friend who wrote her a letter in the mail. The friend had read about it in the newspaper and was under the impression that Adams attorneys would have informed her. This is a serious offense; Adams was on trial for second-degree murder and facing a life sentence. As with any trial, there are issues that need to be carefully investigated, prepared for, and talked about with ones clients. Bolton looked for answers from Adams' family, and not from the defendant herself. This prejudiced Adams severely due to the fact that she was unable to confer with Bolton about the witnesses she would have called and what to expect from the State's witnesses. There were several material witnesses that were not called in Adams' case because she was never asked or allowed to give her input. There were three medical doctors that Adams' had visited in the months prior to her arrest: a general practitioner, an OB/GYN doctor, and an emergency room physician. She requested help for her increasing mental anxiety, postpartum depression, lack of appetite, and extreme crying spells that she was experiencing. Two of the doctors prescribed medication; but none of them referred her to a psychologist who could have actually assisted her with her problem. The emergency room visit was demanded by the Bogalusa police department after a psychotic episode. The hospital physician spoke with Adams and informed her that he was attempting to locate her "a bed" in a mental facility. Adams began crying and informed him that she had two babies at home and that she was currently in high school and needed to finish school. The doctor then stated that he would let

35

her go home this time, but if the police had to escort her back to the hospital that he would have her committed. He released her to her home without seeking out a professional to assist her. Adams is currently in the process of filing a malpractice suit against all three (3) physicians. She could have given Bolton this information and more if she was able to participate in her own defense. Adams was not asked if she would like to testify on her own behalf until the middle of the trial. A person on trial for their life should be questioned, prepared, and given the option to testify in a timely manner; some time prior to trial. The question was sprung on Adams in the middle of her trial with no preparation and no idea of what to expect. Had Bolton had more contact with Adams, she would have been prepared to tell her side of the story and answer questions that the jury had in their mind concerning her feelings. Not being involved in her own defense was prejudicial to Adams because she was not able to present her witnesses and have any input on the questions that were asked of the witnesses that were questioned. The outcome of the trial would have been drastically different had Adams been able to show the jury that she was reaching out for help for her mental illness prior to her arrest, and her primary care physician could have offered a lot of insight into her mental illnesses and the countless times that she had visited her office seeking help.

**ISSUE # 2- DEFENSE ATTORNEYS ERRED WHEN REQUESTING JURY TRIAL WITHOUT ADAM'S KNOWLEDGE OR CONSENT**

**Article 780 of the Code of Criminal Procedure** provides: "A defendant charged with any offense except a capital offense may knowingly and intelligently waive a trial by jury and elect to be tried by the court. This was not a capital case, and the Appellant waived her right to a jury trial and the trial court and the State agreed, after she had been found competent to stand trial. Turning your attention to **Rule 23(a)**, Appellant avers that the **Fifth, Sixth, Ninth, and Tenth Amendments** were violated by placing conditions on the ability to waive trial by jury.

On August 11, 2008, the Twenty-Second Judicial Court convened on this matter; wherein, the defendant Lakeisha Adams was heard before the Honorable Judge Patricia Hedges to request a waiver of trial by jury. (See Exhibit 4) Adams was advised of her rights, waived her rights and it was ordered to proceed with a trial by judge. The State, the Court, and the Defendant all agreed to proceed with a trial by judge. **Article 780 of the Code of Criminal Procedure** provides, "A defendant charged with any offense except a capital offense may knowingly and intelligently waive a trial by jury and elect to be tried by the court." **Federal Rules of Criminal Procedure Rule 23(a)** states, "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." It is clearly stated in Adams' sentencing minutes, on August 11, 2008, "This matter was taken up and submitted to the court and the court finds the defendant has knowingly and voluntarily made her decision to waive her right to a trial by jury. The Court hereby grants the defendant's motion and advised this matter will be set for judge trial October 29-October 31, 2008." [11]

**Louisiana Code of Criminal Procedure Article 834** provides that the defendant has the right to be present during the making, hearing of, or ruling on a preliminary motion or application addressed to the court. However, on December 8, 2008, the court convened and the defense attorney filed a Motion to select Trial by Jury which was granted by the Court, or that of Judge Hedges. Adams was not present at the December 8, 2008 hearing nor did she have any knowledge of the hearing; therefore, she was unable to object to the motion being carried in court. [12] (See Exhibit 4) There was never a discussion between Adams and her defense attorney about proceeding with a jury trial. This was done solely at the discretion

---

[11] August 11, 2008 Minutes of hearing for Motion f or Waiver of Trial by Jury.
[12] December 8, 2008, Defense Motion to Select Trial by Jury, which was presented by defense counsel without the presence or approval of defendant.

of Barry Bolton, the defendant's trial counsel, after she had knowingly and intelligently waived her right to a jury trial.

"Trial by jury is the rule and a departure from this method of trial must be approved by both the defendant and the government. The government will often quickly agree to such a disposition. This is especially true in those cases where counsel is only going to trial to preserve a legal issue for appeal. In some instances the government may agree to a bench trial in order not to offend the trial judge. The procedure is cheaper and quicker but **should only be considered in the below stated circumstances where: (1) the case revolves around a legal issue that a jury will not like, _e.g._, an insanity or other _mens rea_ issue or a mere presence defense which a jury will not abide. In these instances, a judge is more likely to understand the issues and follow the law; (2) the client has no factual issues or evidence to contest the charges but insists on pleading not guilty; (3) the judge will resolve the facts in a way a jury will not.** There must be clear, articulable reasons for waiving a jury trial. Finally, the decision to waive a jury trial belongs to the defendant, not to counsel. Counsel must carefully assess the pros and cons but, at the end of the day, it is the defendant's decision." _By Prof. Louis M. Natali, The National Institute for Trial Advocacy, Notre Dame Law School._ Adams meets the criteria for two of these circumstances, numbered one and three. She had an insanity defense and felt that a judge would have the experience and knowledge to understand the many experts testifying at her trial. This case had extensive, inflammatory media exposure and Adams felt that she could not find a jury of her peers that had not heard of the case and formed an opinion. If Adams had realized that her defense attorney was proceeding with a jury trial despite her wishes, she would have at the very least demanded a change of venue. Instead, when jury selection began and she attempted to question her attorney, he told her to be quiet.

This defendant contends and has shown repeatedly that her trial counsel failed in alerting her to matters of the court, and failed to have her transported on December 8, 2008, wherein it was decided, against her will, to proceed to a trial by jury. This suspended the defendant's due process rights, a clear violation of her *Sixth Amendment Rights*.

Appellant urges the Court to recognize that as with any mode that might be devised to determine guilt, trial by jury has its weaknesses and the potential for misuse. There are circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that a trial by jury would result in the denial to a defendant of an impartial trial. Adams argues that there were mitigating circumstances and she felt that passion, prejudice, public feeling, and lack of knowledge of the laws surrounding her case would render it impossible for her to receive a fair, impartial trial. These are the reasons that Adams felt very strongly about having a bench trial; however, this was circumvented by her own attorney.

Proceeding with a trial by jury not only violated Adams' rights but also prejudiced her. Had Adams went to trial by judge, the outcome of the trial would have been greatly different. The judge would have been aware of the fact that there was insufficient evidence to prove either of the elements of Second Degree Murder. The jury had to come back to open court to get additional instructions on the three charges they could choose between in the guilt phase of the trial. They obviously did not understand the elements of the crimes and how they differ. The charges to the jury were for Second Degree Murder, Manslaughter, and Negligent Homicide. Adams believes that given a judge trial, the trial judge would have understood the charges and all of their elements and found her guilty of a lesser charge or not guilty by reason of insanity due to the weight of the testimony from the experts', Adams' family, friends, teacher, and guidance counselor.

**ISSUE #3-** DEFENSE COUNSEL ERRED WHEN THEY FAILED TO MAKE A MOTION TO
SUPPRESS VIDEOTAPED CONFESSION ON GROUNDS OF INCOMPETENCY

When insanity is the basis of a motion to suppress a confession, the State
must prove that defendant had the mental capacity to waive his right against self-
incrimination. **La. Code Crim. Proc. Ann. art. 703 D.** Had this claim been raised
properly, the State would not have been able to prove that Adams had the mental
capacity to waive her right against self-incrimination. She was declared
incompetent and deemed not able to understand her rights by the trial court after
the confession, and remained incompetent for two years. (See Time Line)

The critical determination of an accused's capacity to stand trial is whether
or not he is able to understand the proceedings and to assist in his own defense.
Appropriate considerations in determining whether or not the accused is fully
aware of the nature of the proceedings include whether or not he understands the
nature of the charge and can appreciate its seriousness, whether or not he
understands what defenses are available, whether or not he can distinguish a guilty
plea from a not guilty plea and understand the consequences of each, **whether or
not he has an awareness of his legal rights**, and whether or not he understands
the range of possible verdicts and the consequences of conviction.

In denying Adams' motion to suppress, the trial court noted, "[a]t this time, I
am going to find that what purports to be a confession has been shown to be freely
and voluntarily made and not made under the influence of fear, duress,
intimidation, menaces, threats, inducements, or promises." It was Bolton's
responsibility to prepare and investigate the methods in which law enforcement
officials used to question Adams'. However, he failed to protect her rights by not
preparing or investigating for the motion to suppress hearing. Adams was clearly
incompetent when she gave her confession if she was declared so by the court at
her sanity hearing soon after and remained incompetent until June of 2008. (See
Time Line)

40

As in the testimony given by the arresting officer he clearly states that he questioned the defendant without properly Mirandizing her.  It was Bolton's responsibility to assert all claims regarding her mental condition and/or the interrogation techniques on voluntariness of the statements performed by law enforcement officials.  It was Bolton's responsibility to bring forth to the trial court that his client was mentally ill and on several medications and should not have been interrogated by law enforcement officials until she was not intoxicated and was able to understand her rights.

Bolton made a Motion to suppress the statement and was denied because he did not raise the claim using a valid reason that had merit, namely her intoxication, mental state, and general lack of understanding.  If Adams was deemed incompetent to stand trial and sent to a state facility to learn her rights, she was obviously incompetent when she gave her confession.  Judge Hedges stated to Adams in open court that she did not believe that Adams knew her rights and was ordering her to take Legal Right classes.  All of the experts who examined her agreed that Adams suffered from major depression and that she reported some paranoid symptoms.  She had asked for psychological help on three separate occasions before her son's death.  When Adams was interviewed, she had trouble putting her thoughts together and staying on topic.  The tape showed that some questions had to be repeated and that Adams never answered all of the questions.  Dr. Deland reviewed the videotaped confession and believed that someone suffering from a mental illness was more susceptible to suggestions than a normal person.  Did this defendant understand her rights?  It was said and noted that Adams was crying and hollering.  Sgt. Tyson never put into his report that he had questioned Adams for a lengthy period of time prior to the recording beginning; this should have been questioned.  It is trial counsel's responsibility to investigate the wrongs done to the defendant and to protect their rights.

41

Adams was medicated and experiencing a mental breakdown. The Motion to Suppress would have had merit had Bolton argued: *Soon after Appellant's arrest, a Motion for a Sanity Hearing was granted. It was heard on January 31, 2007 and Appellant was declared incompetent to stand trial, the trial judge stated she did not understand her legal rights, and she was remanded to Feliciana Forensic Facility to undergo treatment and take Legal Rights classes. If Adams did not understand her legal rights up until June 4, 2008, when she was declared competent to stand trial, then how can she be held accountable for a statement that she waived her rights and made on December 5, 2005?* (See Time Line)

Bolton's failure to make the motion to suppress correctly prejudiced Adams severely. Adams was convicted of second degree murder based solely on this evidence being introduced. There was no other evidence presented. She was clearly incompetent and the trial court held her incompetent, stating that she did not understand her rights. How can a confession that Adams' gave under duress at a time when she was not competent to understand be held against her? Adams' would have been found not guilty at the conclusion of this trial but for this catastrophic error by Bolton.

### ISSUE #4- DEFENSE COUNSEL ERRED WHEN THEY FAILED TO INVESTIGATE

There were irregularities in the protocol from the beginning when Sgt. Tyson questioned Adams. Were her statements voluntary? He Mirandized her from memory. Was this protocol? Sgt. Tyson admitted to leaving various information or details from his report. Important information or details? We know that the police are not always forthcoming. It was Bolton's duty to investigate while preparing a case for Adams, to find out what the police couldn't find out or what they left out. The inconsistencies in Tyson's report versus his testimony at trial proved that he was not forthcoming. One of the many examples of this is the fact that Tyson placed Adams in the back of the police unit after mirandizing her

42

from memory, refused to let her get out when she asked, and refused to allow her mother to speak with her. Adams was made to feel that she was under arrest, treated as if she was under arrest, and was not told she could leave if she chose to. In fact, she asked to be released from the car and was refused. At trial when cross-examined by defense attorney, Sgt. Tyson testified that Adams was not placed under arrest until after the video statement was recorded. This is one of many discrepancies between Tyson's report and his testimony.

Failure to investigate constitutes ineffective assistance of counsel. The **Sixth Amendment** imposes on counsel "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland, 466 U.S. at 691*. Counsel has performed ineffectively "where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." *Availa v. Galaza*, 297 F.3d 911, 918-919 (9th Cir. 2002) (quoting *Sanders v. Ratelle*, 21 F. 3d 1446, 1456 (9th Cir. 1994)). Bolton failed to investigate properly. If he had, he would have uncovered several material witnesses that would have changed the outcome of the trial considerably The Fourth Circuit in *Coles v. Peyton*, 389 F.2d 294 (4th Cir. 1968), first broke new ground overthrowing the older standard in favor of specific requirements which defense counsel must observe in the representation of his client. Importantly, adequate investigation is a central requirement.

The principles may be simply stated: Counsel for an indigent defendant should be appointed promptly. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain the potential defenses that are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine what matter of defense can be developed, and to allow himself enough time for reflection and preparation for trial; *U.S. v. Decoster*, 487 F.2d 1197. Thorough

43

preparation demands that an attorney interview and prepare witnesses before they testify.   No competent lawyer would call a witness without appropriate and thorough pre-trial interviews and discussion.   In fact, more than one lawyer has been punished, found ineffective, or even disbarred for incompetent representation that included failure to prepare or interview witnesses.   *U.S. v. Rynes*, 218 F.3d 319; *U.S. v. Tucker*, 716 F.2d 576 (9th Cir. 1983)(defense counsel ineffective for failing to interview witnesses);   *In re Warmington*, 212 Wis.2d 657, 668 568 N.W.2d 641 (1997)(lawyer disbarred for, among other things, "failure to supervise the preparation of an expert witness"); *In re Wolfram*, 174 Ariz. 49, 847 P.2d 94, 96 (1993)(failure to interview witnesses cited among reason for suspending attorney).

Appellant is entitled to reversal of her conviction and sentence and a new trial ordered; she is also requesting the Court to grant an evidentiary hearing so that Appellant can produce additional, factual determinations that are essential to prove that counsel's representation was ineffective and how the representation destroyed petitioner's rights and prejudiced the outcome of her case.

The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. See, *State v. Prudholm*, 446 So.2d 729 (1984). In *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006), the Court stated that courts are to apply "the strong presumption that counsel performed adequately and exercised reasonable professional judgment." "[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Id. (internal quotation marks omitted). At the same time, however, we recognize the distinction between strategic judgment calls and plain omission, and we are

"not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all. See, *Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992); *Moore v. Johnson*, supra. See, *Lockett v. Anderson*, 230 F.3d 695, 715-17 (5th Cir. 2000)(holding that defendant was prejudiced under Strickland based on counsel's failure to investigate mitigating evidence relating to defendant's mental condition); *Moore v. Johnson*, supra, (holding that counsel's failure to proceed reasonably in light of that evidence once disclosed prejudiced the defendant).

Adams is not proposing that Bolton failed on filing a few minor motions; he made major errors that ultimately prejudiced her case severely. Adams' spoke to Bolton prior to trial about the three physicians that she sought out when she was attempting to obtain help for her progressing mental deficiencies; Bolton failed to speak to them or call them as witnesses at the trial to prove that Adams' was crying out for help. See *Moore v. Johnson*. Bolton was fully aware from speaking to Adams family that she had changed considerably and they noticed marked changes in her behavior since the birth of her son. Adams had been experiencing problems for some time, and it is safe to say it did not come quickly, but was over time; she was unstable and attempted to find the proper medical attention. Bolton should have sought out healthcare officials to fully diagnosis the perimeters of Adams' mental illness. It is evident by the testimony given during the sanity commission that Adams suffered some sort of psychosis and mental disorder and her attorney should have sought the proper help for Adams and the correct avenue in which to defend the rights of a mentally impaired individual. Adams' had reported that she had been sexually molested at an early age by a male cousin from the age of three until she was approximately fifteen years of age. When she finally found the strength to tell a social worker at her high school, her family refused to believe her.

This contributed greatly to the major depression Adams was still experiencing some time later.

In failing to investigate, Bolton prejudiced Adams extensively. The outcome of the trial would have differed greatly if only he had taken the time to research witnesses, question doctors Adams had visited regularly, and questioned the testimony of the State's witnesses to an extent that he required documentation to corroborate their testimony.

One example is when Adams reported to Bolton that the court appointed psychologist, Dr. Thompson, was openly aggressive and prejudiced toward her and the case. Most of Dr. Thompson information came from the State and he generally accepted it as true. He actually began his first interview with Adams by stating, "Word on the street is you did this because you were jealous of the other girl having a baby for your boyfriend." After he began the evaluation in that manner, Adams did not want to talk about her baby's death with him at all, which he ultimately held against her.

Another example of his failure to investigate is concerning Montrel Jones testimony. He testified that Adams called him dozens of times throughout the day and that she was distraught. Adams avers that if Bolton had questioned this testimony and asked that documentation in the form of phone records be supplied, it would have become apparent that Jones was lying. Jones testimony was false; Adams argues that she never called him at all that day. Phone records would have proven her claims.

Bolton was asked to provide a copy of the case file in which he used to defend the rights of Adams. In that file there was very little in the way of evidence to prove or provide that Bolton had indeed worked for Adams best interest. As said before it is every defendant's right to have the best legal representation even if they are appointed counsel for an indigent offender who is mentally incompetent.

**ISSUE #5 –** DEFENSE COUNSEL ERRED WHEN HE PROCEEDED WITH TRIAL BY JURY WITHOUT REQUESTING A CHANGE OF VENUE.

Bogalusa, Louisiana and Washington Parish in general is a small community. Adams' case was very widespread and had extensive, inflammatory media exposure for months. One of the many reasons that Adams' requested a bench trial was because she felt it would be difficult to find an impartial jury. Defense counsel made a motion for a jury trial at the last minute without Adams' consent. Had she known that he was proceeding with a jury trial beforehand, she would have attempted to stop it, or at the very least requested a change of venue. This right was also denied to Adams since she was under the impression until the day of trial that her wishes had been honored and she would be proceeding with a bench trial. Had she been allowed to assist in her own defense and not been left out of every important decision; namely which witnesses to call, what type of trial to have, where to have the trial, what to ask the witnesses that were called, whether she would testify, etc…, the trial would have had a very different ending. Adams' was prejudiced in several ways, violating her Constitutional rights; before, during, and after her trial.

**ISSUE #6-** APPEAL COUNSEL ERRED WHEN FILING DIRECT APPEAL WITHOUT PROPER RECORDS OR CONFERRING WITH ADAMS AT ALL

Sollars, who was appointed to represent Adams in her direct appeal, was not involved in her case during trial. Sollars was appointed by State. She is a part of the Louisiana Appellate Project.

An appeal from a conviction is an absolute right. *La. Const. Art. VII § 10 (1921); La. Const. Art. V § 5 (D)(2) (1974).* It bears emphasis that where denial of equal protection is the issue, it matters not, that the indigent had a fair opportunity to present a defense and have his conviction reviewed on direct appeal. The unfairness born of discrimination denying equal protection is as

47

offensive to the Constitution as any unfairness resulting from procedural deficiencies in the criminal system.

Sollars first contacted Adams when she sent her a copy of the direct appeal that she filed in her name. She asked no questions and did not contact Adams **at all** to question whether she may have claims that she would like to add to the direct appeal. In Adams post-conviction to the district court, and to the First Circuit Court of Appeals, it was mentioned in the denials that Claims 1-3 should have been brought on direct appeal. Adams had no contact with her appeal attorney, who was appointed from the Louisiana Appellate Project, and was not able to add her own claims into the appeal. The first time she saw the direct appeal, it had already been filed. Claims 1-3 are claims that Adams would have included in her direct appeal had she been given the choice.

## CONCLUSION

Adams was incompetent at the time of this offense and did not know or understand the difference between right and wrong; she was declared incompetent and held at Feliciana Forensic Facility for almost eighteen (18) months soon thereafter. Furthermore, neither of the essential elements of the crime of Second Degree Murder was ever proven. In Adams' own statement that was used against her, she made the statement several times that she did not mean to hurt him. Adams' attorney made several serious errors in defending her case, they are numerated above. She was denied her right to due process when the trial court allowed Bolton to proceed with a jury trial against her wishes, and again when the trial was held in the same small town that the inflammatory news reports were given for several months. Therefore, this conviction cannot stand .Based upon the

foregoing claims presented in this writ, which is true and correct, petitioner's conviction and sentence must be vacated.

**WHEREFORE**, Petitioner respectfully moves that this Court enter an order as follows:

Granting such relief as justice may require, including but not limited to reversal of her conviction for second degree murder, vacation of her life sentence, and remand to the Twenty-Second Criminal District Court for retrial, or failing this remedy, granting Petitioner an evidentiary hearing in the judicial district court as provided by law in order to resolve the questions of fact described herein.

This the ___ day of _____, 2012.

Respectfully submitted,

_____
Lakeisha Shanae Adams # 551775
Louisiana Correctional
Institute for Women
Post Office Box 26
Saint Gabriel, Louisiana 70776

49

## CERTIFICATE OF SERVICE

I, Lakeisha Shanae Adams hereby certify that the foregoing Memorandum in Support for the Application for Post-Conviction Relief has been served upon the State of Louisiana through the Washington Parish District Attorney, Walter P. Reed, 905 Pearl Street, Franklinton, Louisiana 70438 by depositing the same in the U.S. mail, postage pre-paid and properly addressed on the _____ day of June, 2012.

_____

Lakeisha Shanae Adams #551775

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF WASHINGTON
STATE OF LOUISIANA

DOCKET NO: 06-CR 6 -94104                                         DIVISION "E"

STATE OF LOUISIANA

VERSUS

LAKEISHA S. ADAMS

FILED                                           DEPUTY CLERK

## ORDER FOR ANSWER

Petitioner filed an Application for Post Conviction Relief on January 4, 2012.

At this time, the Court Orders the Office of the District Attorney to answer Petitioner's

Claim 4, Ineffective Assistance of Counsel. Claims 1 though 3 are denied as being

matters which should have been addressed on appeal.

Signed this ___26___ day of January, 2012 in Franklinton, Louisiana.

WILLIAM J. BURRIS,
DISTRICT JUDGE, DIVISION "E"

Please Serve:
Office of the District Attorney
Pearl Street
Franklinton, Louisiana 70438
Attn: Dale Branch

1

Copy of Original
Clerk of Court

Exhibit 8

STATE OF LOUISIANA ₂₀₁₂ FEB 15   nᵣ  NO: 06-CR-6-94101

VS.                                    22ᴺᴰ JUDICIAL DISTRICT

LAKEISHA S. ADAMS                      PARISH OF WASHINGTON

### DISTRICT ATTORNEY'S ANSWER TO
### PETITION FOR POST CONVICTION RELIEF

NOW INTO COURT, Through the undersigned Assistant District Attorney, comes: BURL CAIN, (Warden), and for answer to the application for post conviction relief filed by the defendant herein with respect represents that:

### STATEMENT OF THE CASE

Following a jury trial, this defendant was convicted of second degree murder of her infant son referred to as J.A. by placing him in a clothes dryer and turning it on. She appealed this conviction to the First Circuit Court of Appeal and that court by judgment rendered May 7, 2010 affirmed the conviction and sentence. State vs. Adams 2009 KA 2015. She then sought writs from the Louisiana Supreme Court which were denied on January 7, 2011. State vs. Adams 2010-KO-1375 (La.2011) This petition for post conviction relief was filed January 4, 2012. The petition contains four claims for relief. This court has denied claims one through three and ordered the state to answer claim four, ineffective assistance of counsel.

### RESPONSE TO CLAIM IV

The defendant claims ineffective assistance of counsel.

These allegations must be determined in light of the two-pronged test set out by the U. S. Supreme Court in *Strickland v. Washington* 446 U. S. 668, 104 S. Ct. 2052, 80 Led. 2d 674 (1984). The defendant must show both that (1) counsel's performance was deficient and (2) that the deficiency prejudiced the defendant by showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. Such a claim requires the defendant to show a reasonable probability that, but

Exhibit 9                      1

for counsel's error, the outcome of the trial would have been different. *State ex rel.*

*Busby v. Butler*, 538 So. 2d 164 (La. 1988), *State v. Wright* 598 So. 2d 493 (2ᵈ Cir.

1992), *State v. Bouie* 598 So. 2d. 610 (4ᵗʰ Cir. 1992).

In *Strickland*, supra the court stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac*, 456 U. S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed. 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See *Michel v. Louisiana*, [350 U.S. 91, 76 S.Ct. 158]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
>
> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials revolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of assigned cases, and undermine the trust between attorney and client.
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct of the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated on

prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

A claim of ineffectiveness of counsel is analyzed under the two pronged test developed by the United States Supreme Court (Strickland cited above). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State vs. Serigny 610 So.2nd 857,859-60 (La.App.1st Cir. 1992), writ denied, 614 So.2nd 1263 (La.1993).

Although this defendant did not set out specific allegations by number, the following are contained in her brief beginning on page 32. The first allegation is defense counsel did not send her a complete copy of his file that she had requested. This allegation has nothing to do with the ineffective assistance claim as it is not a ground for relief.

Next, she alleges that counsel had very little contact with her prior to trial. If this true, the defendant fails to carry her burden of proof unless she alleges with specificity what any more contact would have revealed and how it would have affected the trial.

She indicates that she may have wanted the trial judge to hear the case rather than the jury but trial counsel advised her that a jury would be her best hope. This is a pure judgment call and is not indicative of ineffective assistance. He was obviously trying to hold out some hope in light of this evidence and the evidence against the defendant that the jury would simply negate the evidence and find her not guilty of the crime. The fact that this didn't work is not evidence of ineffective assistance.

Next, she alleges that it was counsel's responsibility in preparing her case to "dig deep, to find out what the police couldn't find out, or what they left out." There are no factual allegations to support this claim

The next allegation is that trial counsel should have done more to try to suppress her confession. At the motion to suppress, this court found that the confession was freely and voluntarily given after lengthy hearing in which the defendant's attitude was explored. This issue was discussed thoroughly by Court of Appeal as one of the assignments of error. The court affirmed the trial court's judgment that the statement was given freely and voluntarily even though the issue of her mental condition at the time of the statement was not raised. Although there may not have been testimony from any psychiatric expert, the defendant's mental state as described by the officers who took the statement was thoroughly explored beginning on page 6 of the Court of Appeal decision. In this petition, the defendant fails to cite any psychiatric evidence that her statement was involuntary because of her mental condition. The Court of Appeal determined that even if the claim had been made in the motion to suppress, it would have failed because the state was entitled to the assumption of sanity provided in R.S.15:432. The Court of Appeal (page 8) found that notwithstanding any depression suffered by the defendant that she spoke willingly with the investigating officers and indicated that she had sufficient presence of mind to conceive that she initially lied about what occurred and she was telling the truth at the time she confessed. The Court of Appeal outlined the testimony of several of the expert witnesses. On page 11, Dr. John Thompson was of the opinion that defendant's actions were inconsistent with psychotic depression or depression that causes

4

one to loose touch with reality.   Instead, her actions indicate a non psychotic motive.

Since the confession was given shortly after the crime was committed, there is no

indication that the outcome of the motion to suppress would be any different if the expert

testimony would have been used.   The jury heard all of the expert testimony and could

make a determination as to whether the statement was influenced by defendant's mental

status.   In addition, this court has already denied claim No. II which raised the free and

voluntary nature of the statements given to police by the defendant.   This claim raised

many of the allegations now labeled under the ineffective assistance claim.


## CONCLUSION

For the reasons stated above, this claim can be determined without an evidentiary

hearing and should be dismissed.


Respectively submitted,


DALE E. BRANCH
ASSISTANT DISTRICT ATTORNEY
905 PEARL STREET
FRANKLINTON, LOUISIANA 70438
1/985/839-6711
BAR ROLL NO. 0339

STATE OF LOUISIANA

VS.

LAKEISHA S. ADAMS

NO. 06-CR-6-94101

22ND JUDICIAL DISTRICT

PARISH OF WASHINGTON

### CERTIFICATE

I CERTIFY THAT THE FOREGOING ANSWER WAS SERVED ON Lakeisha S. Adams #5551775, Louisiana Correctional Institute for Women, P.O. Box 26, St. Gabriel, LA 70776

by placing a copy of same in the United States mail postage prepaid addressed to her.

February _16th_, 2012

_____

Dale E. Branch

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF WASHINGTON
STATE OF LOUISIANA

DOCKET NO: 06-CR 6 -94104             DIVISION "E"

STATE OF LOUISIANA

VERSUS

LAKEISHA S. ADAMS

_____
FILED                                DEPUTY CLERK

## ORDER WITH REASONS

Petitioner filed an Application for Post Conviction Relief on January 4, 2012. Claims 1 though 3 are denied as being matters which should have been addressed on appeal. The Court requested the District Attorney answer Claim 4 for ineffective assistance of counsel.

The District Attorney filed their answer and after review, the Court in accordance with La. C.Cr.P. Art. 928, determines the defendant received very effective assistance of counsel and the factual and legal issues are resolved, therefore IT IS ORDERED THAT defendant's Application for Post Conviction Relief be dismissed.

Signed this ___27___ day of February, 2012 in Franklinton, Louisiana.

WILLIAM J. BURRIS,
DISTRICT JUDGE, DIVISION "E"

Please Serve:
Kakeisha S. Adams

True Copy of Original
This _____
_____ Clerk of Court

1

Exhibit 10

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA                          NUMBER 2012 KW 0504

VERSUS

LAKEISHA SHANAE ADAMS                       **JUN 0 4 2012**

---

In Re:     Lakeisha Shanae Adams, applying for supervisory
           writs, 22nd Judicial District Court, Parish of
           Washington, No. 06-CRI-34101.

---

BEFORE:  GAIDRY, McDONALD AND HUGHES, JJ.

    WRIT DENIED.

                       JMM
                       EJG

**Hughes, J.**, dissents in part and would grant the writ in
part on the issue of defendant's choice of bench trial
rather than a jury trial.

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT

Exhibit 11

# The Supreme Court of the State of Louisiana

STATE OF LOUISIANA

NO.   2010-KO-1375

VS.

LAKEISHA SHANAE ADAMS

_ _ _ _ _ _

IN RE:   Adams, Lakeisha Shanae; - Defendant; Applying For Writ of
Certiorari and/or Review, Parish of Washington,  22nd Judicial
District Court Div. E, No. 06 CRI 94104; to the Court of Appeal,
First Circuit, No. 2009 KA 2015;

_ _ _ _ _ _

January 7, 2011

Denied.

> JTK
>
> BJJ
>
> JPV
>
> JLW
>
> GGG
>
> MRC

Supreme Court of Louisiana
January 7,2011

**Deputy** Clerk of Court
For the Court

Exhibit 12

# The Supreme Court of the State of Louisiana

STATE EX REL. LAKEISHA SHANAE ADAMS

VS.

STATE OF LOUISIANA

NO. 2012-KH-1408

--- --- --- ---

IN RE: Adams, Lakeisha Shanae; - Plaintiff; Applying for Reconsideration of this court's action dated November 2, 2012, Parish of Washington, 22nd Judicial District Court Div. E, No. 06-CRI-34101; to the Court of Appeal, First Circuit, No. 2012 KW 0504;

--- --- --- ---

**December 14, 2012**

Reconsideration denied.

> JLW
>
> BJJ
>
> JPV
>
> JTK
>
> GGG
>
> MRC

Supreme Court of Louisiana

**Deputy** Clerk of Court
For the Court

Exhibit 13

July 27, 2009


Lakeisha Adams  #551775
Louisiana Correctional Institute
     For Women
Post Office Box 26
St. Gabriel, LA 70776


Attorney at Law
Barry Bolton
712 Louisiana Ave.
Bogalusa, LA 70427


## RE:  REQUEST FOR ENTIRE FILE UNDER DOCKET NUMBER 0694104

Dear Sir:

On March 25, 2009, you handled the above-mentioned case.  At this time, I am requesting a copy of my **entire** file as it is vitally important for research purposes.  This includes all mental health records, autopsy reports, police reports, witness statements, sanity commission determinations, progress reports, work product, motions with responses and all other relevant documentation thereof.  I intend on filing legal briefs.  Please send at your earliest convenience.

Thank you for your time in this very important matter.

Kindest Regards:


_____

Lakeisha Adams


Exhibit 14

August 11, 2009

Lakeisha Adams #551775
Louisiana Correctional Institute
    For Women
Post Office Box 26
St. Gabriel, LA 70776

Attorney at Law
Barry Bolton
712 Louisiana Ave.
Bogalusa, LA 70427

RE: REPONSE TO RETRIEVING FILE

Dear Mr. Bolton:

I am in receipt of your letter dated August 3, 2009 in regards to my request for a copy of my file.
I understand that I am entitled by law to a copy of my file.   Since I never received one, I truly
believe that regardless of the thickness, I am entitled to it and there is no need to send anyone to
retrieve it as the information is confidential.

In addition, at sentencing, it was stated that a motion for appeal and designation of record would
be filed on my behalf for the Appellate Project to pick my case up but I have not received a copy
of the said motion or information of such.  At this time, I have to wonder if that has been done
timely.  I am currently serving a life sentence and it is vitally important that all proceedings are
timely filed.

Please respond as soon as possible as this matter is vitally important.

Thank you for your time.

Kindest regards,

_____

Lakeisha Adams

January 17, 2011


Lakeisha Adams  #551775
Louisiana Correctional Institute
    For Women
Post Office Box 26
St. Gabriel, LA 70776


Barry Bolton
Attorney at Law
 712 Louisiana Ave.
Bogalusa, LA 70427

RE:    State v. Lakeisha Shanae Adams
       Washington Parish 22nd Judicial District Court
       Docket No. 06-CRI-94104

Dear Mr. Bolton:

Back in 2005, through 2009, you represented me on a second-degree murder charge. Please forward me a copy of my complete case file.  Please include all police reports, supplemental reports, statements, investigation reports, 911 transcript, autopsy report, work product, any and all motions and responses.  Also forward me a copy of all medical and mental health records in your possession including any information on the sanity commission and the sanity hearing.

Please forward the case file to the above address as soon as possible or make an appointment to visit the Institution and bring the case file to me.  I am in dire need of the file in order to file my application for post conviction relief.

I will be looking forward to receiving the requested documents in the very near future.  Thanking you in advance for your prompt attention in this matter.

Respectfully submitted,


_____
Lakeisha S. Adams

LSA/pl

cc:    File
       Allen Myles

April 5, 2011

## **SECOND REQUEST**

Lakeisha Adams #551775
Louisiana Correctional Institute
  For Women
Post Office Box 26
St. Gabriel, LA 70776

Barry Bolton
Attorney at Law
 712 Louisiana Ave.
Bogalusa, LA 70427

RE:    State v. Lakeisha Shanae Adams
       Washington Parish 22nd Judicial District Court
       Docket No. 06-CRI-94104

Dear Mr. Bolton:

On January 17, 2011, I wrote and requested a copy of my complete file from you, but as of this date I have not received a response. Back in 2005, through 2009, you represented me on a second-degree murder charge. Please forward me a copy of my complete case file. Please include all police reports, supplemental reports, statements, investigation reports, 911 transcript, autopsy report, work product, any and all motions and responses. Also forward me a copy of all medical and mental health records in your possession including any information on the sanity commission and the sanity hearing.

Mr. Allen J. Myles informed me that he turned his whole file over to you when you started representing me.

Please forward the case file to the above address as soon as possible or make an appointment to visit the Institution and bring the case file to me. I am in dire need of the file in order to file my application for post conviction relief.

I will be looking forward to receiving the requested documents in the very near future. Thanking you in advance for your prompt attention in this matter.

Respectfully submitted,


_____

Lakeisha S. Adams

LSA/pl

cc:    File

May 3, 2011

## THIRD & FINAL REQUEST

Lakeisha Adams  #551775
Louisiana Correctional Institute
    For Women
Post Office Box 26
St. Gabriel, LA 70776

Barry Bolton
Attorney at Law
 712 Louisiana Ave.
Bogalusa, LA 70427

RE:    State v. Lakeisha Shanae Adams
       Washington Parish 22nd Judicial District Court
       Docket No. 06-CRI-94104

Dear Mr. Bolton:

On January 17, 2011, and April 5, 2011, I wrote and requested a copy of my complete file from
you, but as of this date I have not received a response. Back in 2005, through 2009, you
represented me on a second-degree murder charge. Please forward me a copy of my complete
case file. Please include all police reports, supplemental reports, statements, investigation
reports, 911 transcript, autopsy report, work product, any and all motions and responses. Also
forward me a copy of all medical and mental health records in your possession including any
information on the sanity commission and the sanity hearing.

Mr. Allen J. Myles informed me that he turned his whole file over to you when you started
representing me.

Please forward the case file to the above address as soon as possible or make an appointment to
visit the Institution and bring the case file to me. I am in dire need of the file in order to file my
application for post conviction relief.

I will be looking forward to receiving the requested documents in the very near future.  Thanking
you in advance for your prompt attention in this matter.

Respectfully submitted,


_____
Lakeisha S. Adams

LSA/pl

cc:    File
       Office of Disciplinary Counsel

May 3, 2011


Lakeisha Adams  #551775
Louisiana Correctional Institute
    For Women
Post Office Box 26
St. Gabriel, LA 70776


Office of the Disciplinary Counsel
4000 S. Sherwood Forest Blvd., Suite 607
Baton Rouge, LA  70816

RE:   ATTORNEY FILE
      State v. Lakeisha Shanae Adams
      Washington Parish 22nd Judicial District Court
      Docket No. 06-CRI-94104

Ladies and Gentlemen:

Enclosed is the Ethical Conduct Complaint I want to file against Barry Bolton, the attorney who
represented me at my second-degree murder trial.  Please help me to obtain a copy of my
complete file from Mr. Bolton.

I am in the process of preparing my application for post conviction relief, which is due at the end
of this year.  I have written Mr. Bolton but have not received a response. (See enclosed
documentation).

 If additional information is required please contact me at the above address. Thank you for your
prompt attention in this very urgent matter.

Respectfully submitted,


_____
Lakeisha Adams

LA/pl

Enclosures

Cc:   File
      Barry Bolton, Attorney at Law, 712 Louisiana Ave., Bogalusa, LA 70427


Exhibit 15



OFFICE OF THE DISCIPLINARY COUNSEL

LOUISIANA ATTORNEY DISCIPLINARY BOARD

4000 S. Sherwood Forest Blvd., Suite 607 · Baton Rouge, Louisiana 70816 · (225) 293-3900 · 1-800-326-8022 · FAX (225) 293-3300

# ETHICAL CONDUCT COMPLAINT

## PART A: INFORMATION ABOUT YOU – PLEASE KEEP CURRENT

1. FULL NAME: LAKEISHA ADAMS #551775

2. HOME ADDRESS: LA CORRECTIONAL INSTITUTE FOR WOMEN, POST OFFICE BOX 26

   CITY: ST. GABRIEL      STATE LA      ZIP 70776

   TELEPHONE: area code ( _____ ) N/A

3. EMPLOYER: INCARCERATED

   WORK ADDRESS: _____

   CITY: _____ STATE _____ ZIP _____

   TELEPHONE: area code ( _____ ) _____

4. NAME OF PERSON WHO CAN ALWAYS REACH YOU: PERSONNEL AT THE PRISON

   ADDRESS & TELEPHONE: SAME AS ABOVE

## PART B: INFORMATION ABOUT ATTORNEY

1. NAME OF ATTORNEY: BARRY BOLTON

2. ADDRESS: 712 LOUISIANA AVE

   CITY: BOGALUSA      STATE LA      ZIP 70427

   TELEPHONE: area code ( _____ ) _____

3. WHEN DID YOU HIRE THIS ATTORNEY? COURT APPOINTED

4. WHAT DID YOU HIRE THIS ATTORNEY TO DO FOR YOU? REPRESENTED ME AT TRIAL

5. WHAT WAS YOUR FEE ARRANGEMENT WITH THE ATTORNEY? APPOINTED

1

The Office of the Disciplinary Counsel and The Disciplinary Board are established by the Supreme Court of Louisiana to administer the lawyer discipline and disability system by investigating, prosecuting and conducting fact finding into complaints against attorneys in Louisiana.

LOUISIANA ATTORNEY DISCIPLINARY BOARD

## PART C:  EXPLANATION OF YOUR COMPLAINT

State in detail why you think this attorney has done something improper or has failed to do something which this attorney should have done.  Include the names and addresses of all persons who know something about your grievance.  Attach copies of court papers, cancelled checks or receipts showing payments of attorney's fee, and other documents relevant to your grievance.  Attach additional 8 1/2" x 11" sheets of paper if you need more space for your explanation.

Mr. Barry Bolton represented me on a second-degree murder charge back in 2005,

through 2009, at which time I was found guilty as charged.  I have requested a copy

of my complete file on the following dates: July 7, 2009; August 11, 2009; January

17, 2001; April 5, 2011; and May 3, 2011.  I have yet to receive any response on my

request.

I am in trying to prepare my application for post conviction releif and need all

the requested documents that he has in his possession.

2

LOUISIANA ATTORNEY DISCIPLINARY BOARD

LIST ALL DOCUMENTS ATTACHED: Letters dated July 7, 2009, August 11, 2009, January 17, 2001, April 5, 2011, and May 3, 2011.

DATE OF SIGNING: 5-3-11

_____
COMPLAINANT

_____
COMPLAINANT

RETURN THIS FORM TO:    Office of the Disciplinary Counsel
                        4000 S. Sherwood Forest Blvd., Suite 607
                        Baton Rouge, Louisiana 70816

3

| LAKEISHA ADAMS | DOCKET: _____ SECTION: _____ |
|---|---|
| VERSUS | JUDICIAL DISTRICT COURT |
| STATE OF LOUISIANA<br>DISTRICT ATTORNEY<br>FOR THE PARISH OF WASHINGTON | PARISH OF WASHINGTON |
| | STATE OF LOUISIANA |
| FILED: _____ | DEPUTY: _____ |

## COMPLAINT FOR DISTRICT ATTORNEY FILE AND PUBLIC RECORDS

MAY IT PLEASE THE COURT:

COMES NOW, Lakeisha Adams plaintiff *pro se*, herein filed this matter for her District Attorney Files any and Public Records in the criminal matter entitled *State v. Lakeisha Adams* and enumerated in Docket Number 06-CRI-94104, Parish of Washington, and states to this Honorable Court the following matters to-wit:

### I.

Lakeisha Adams herein is an incarcerated person bearing the Department of Corrections Number, whom has been sentence to the Department of Public Safety and Correction in Criminal Docket Number 06-CRI-94104 in the Parish of Washington. Said plaintiff herein is incarcerated at Louisiana Correctional Institute for Women, 7205 Highway 74, St. Gabriel, LA 70776.

### II.

On an Indictment filed in Criminal Docket Number 06-CRI-94104 in the Criminal Court of the 22nd Judicial District against plaintiff for the violation of second-degree murder as defined by *LSA-R.S. 14:30.1*.

### III.

On March 25, 2009, the District Court Judge assigned to this matter found the plaintiff guilty thus, sentencing plaintiff to a life sentence without benefit of parole, probation, or suspension of sentence. Plaintiff now seeks all records and/or other documentation, which is necessary to pursue her quest for any and all post conviction relief and remedy.

### IV.

Plaintiff contends that after the criminal litigation is "finally adjudicated" or "otherwise settled", a person shall have access to district attorney records pertaining to criminal litigation *LSA-R.S. 44:33(Supp. 1992)*.

True Copy of Original
this 8-12-11
ᴡ. Clerk of Court

Exhibit 16

**V.**

Lakeisha Adams has been repeatedly denied her right to gain access to her District Attorney File as well as and/all public records, which has deprived her of a fair opportunity to present her claim.  To show such a particularized need, the plaintiff needs to file an application for post conviction relief that set forth specific claims of constitutional errors requiring the requested documentation for support.

However, the plaintiff needs to have the appropriate documentation and records used to convict her so that she can respectfully submit and file her application for post conviction relief claims with the district court.  If the plaintiff cannot be granted her request for documents in this matter it would not resolve the inherent error(s) submitted in her application for post conviction relief.

**VI.**

By denying plaintiff the opportunity to seek the needed documentation that is contained in her District Attorney File as well as those documents held in public records it is denying her the opportunity to resolve her claims fairly under either the provisions of *La. Code Crim. Proc. Ann. Art. 929* and causes plaintiff *Brady* issues.

**WHEREFORE**, Adams submits this complaint to the Court for relief in seeking her District Attorney File as well as any and all public documentation in referenced to the docket entitled "*State v. Lakeisha Adams*" Criminal Docket Number 06-CRI-94104 through Forma Pauperis, as an indigent offender and presents that documentation with this complaint.

**WHEREFORE**, Adams, ask that this matter be set for a Rule to Show Cause in the alternative if she is not granted her relief sought.

**WHEREFORE**, plaintiff seeks her District Attorney file as well as any and all public records in criminal docket number Docket Number 06-CRI-94104 in the Parish of Washington, 22nd Judicial District.  Plaintiff herein asks for all equitable relief sought herein and that she is entitled to.

This the 18 day of July 2011.

Respectfully submitted,

Lakeisha Adams 551775
Louisiana Correctional Institute
For Women -- Libra 2 A/B
Post Office Box 26
St. Gabriel, LA 70776

Please Serve:

Warden James Rogers
Louisiana Correctional
  Institute For Women
7205 Highway 74
Post Office Box 26
St. Gabriel, LA 70776

Walter P. Reed
District Attorney
Washington Parish
Justice Center
701 N. Columbia Street
Covington, LA 70433

ORDER
District Attorney
ordered to answer
within 30 days. In the
mandutity
3 August 2011.

Louisiana Correctional Institute
  For Women -- Libra 2 A/B
7205 Highway 74, Post Office Box 26
St. Gabriel, LA 70776

3

22ND JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON
STATE OF LOUISIANA

STATE OF LOUISIANA     DOCKET NO: 06 CRL 94104

VERSUS         FILED:

LAKEISHA SHANAE ADAMS   CLERK:

## MOTION TO OBTAIN DISTRICT ATTORNEY FILE
## AND OTHER PUBLIC RECORDS
## PURSUANT TO LSA-R.S. 44:32(C)

COMES NOW INTO COURT, the Petitioner Lakeisha Shanae Adams, in proper person and files this Motion to Obtain District Attorney File Pursuant to LSA-R.S. 44:32(C) stating that she is entitled to her District Attorney File and other public records as related to the end of litigation in a finalized matter.

I.

Petitioner Lakeisha Shanea Adams is currently incarcerated at Louisiana Correctional Institute for Women in St. Gabriel, Louisiana. Petitioner was convicted of LSA-R.S. 14.30.1 a violation of second-degree murder, which she is serving a life-sentence; without the possibility of probation and parole.

II.

On March 25, 2009 a twelve-member jury sentence Adams to serve a life sentence herein convicted the Petitioner. Petitioner now seeks all records and other documentation, which is necessary to pursue her quest for any and all post conviction relief.

III.

Petitioner contends that after the criminal litigation is "finally adjudicated" or "otherwise settled," a person shall have access to district attorney records pertaining to criminal litigation. **La. Rev. Stat. Ann. 44:3 (Supp. 1992).** Petitioner was "finally adjudicated" on March 25. 2009.

IV.

In accordance with **La. Rev. Stat. Ann. 44:32(C) (Supp. 1992)** read, in part, as follows: (1)(a) For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to the persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of Louisiana. (b) For all public records in the custody of a clerk of court, the clerk may also establish reasonable uniform written procedures for the mechanical reproduction of any such public record.

V.

Article 12, 3 of the Louisiana Constitution of 1974 provides that "no person shall be denied the right to . . . examine public [records], except in cases established by law." We held in *Association for Rights of Citizens, Inc. v. St. Bernard*, 557 So. 2d 714, 716 (La. App. 4th Cir. 1990) that This provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise . . . Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights. After the criminal litigation is "finally adjudicated" or "otherwise settled", a person shall have access to District Attorney records pertaining to criminal litigation. *La. Rev. Stat. Ann. 44:3 (West Supp. 1992)*; *Harrison v. Norris*, 569 So. 2d 585 (La. App. 2d Cir. 1990), *writ denied* 571 So. 2d 657 (La. 1990).

VI.

Since the criminal litigation has been fully adjudicated and/or finally settled in this case, the District Attorney should be ordered to provide Petitioner a copy of those records in his/her possession, which are not otherwise privileged pursuant to the Louisiana Code of Criminal Procedure and all due authorities of law.

WHEREFORE, the Petitioner hereby request that the District Attorney File and other public records as related to the end of litigation in a finalized matter along with any and all relief sought herein.

This the _14_ day of March, 2011.

Respectfully submitted,

Lakeisha Shanae Adams # 551775<br>
Petitioner, Pro Se<br>
Louisiana Correctional<br>
Institute for Women<br>
Post Office Box 26<br>
St. Gabriel, LA  70776

## CERTIFICATE OF SERVICE

I, Lakeisha Shanae Adams hereby certify that a copy of the above pleading was served by U. S. mail, proper postage pre-paid, upon Walter P. Reed, District Attorney for the Parish of Washington, 701 N. Columbia St. Covington, LA 70433 on this 7th day of March 2011.

Lakeisha Shanae Adams

**PLEASE SERVE:**

Lakeisha Shanae Adams # 551775
Louisiana Correctional
Institute for Women
Post Office Box 26
St. Gabriel, LA 70776

Warden Jim Rogers
Louisiana Correctional
Institute for Women
Post Office Box 26
St. Gabriel, LA 70776

22ND JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON
STATE OF LOUISIANA

STATE OF LOUISIANA                    DOCKET NO: 06-CRI 94104

VERSUS                                FILED: _____

LAKEISHA SHANAE ADAMS                 CLERK: _____

---

## ORDER

---

CONSIDERING THE FOREGOING:

IT IS ORDERED ADJUDGED AND DECREED that the Petitioner Lakeisha Shanae Adams is to obtain District Attorney File and Other Public Records Pursuant to LSA-R.S. 44:32(C).

IT IS HEREBY ORDERED that Petitioner shall be made available to any and all other public records that she is allowed under **Article 12, 3 of the Louisiana Constitution of 1974.**

This the _____ day of March, 2011.

TWENTY-SECOND JUDICIAL DISTRICT COURT

*Denied at this time. Movant must first made a request to District Attorney or other agency and comply with R.S. 44-3 et seq.*   3/17/11

**CERTIFICATE OF SERVICE**

I, Lakeisha Shanae Adams do hereby certify that a copy of the above and foregoing document has been served on Walter P. Reed, District Attorney Washington Parish, Justice Center, 701 N. Columbia St., Covington, Louisiana 70433, by placing a copy of the same in the U.S. Mail postage prepaid and properly addressed on this 31st day of January 2011.

Lakeisha Shanae Adams

22ND JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

LAKEISHA SHANAE ADAMS

DOCKET NO: 06 CRI 94104

FILED: _____

CLERK: _____

************************************************************************

MOTION FOR CONTRADICTORY HEARING WITH DISTRICT ATTORNEY
AS PROVIDED UNDER LSA-C.Cr.P. ART. 822

************************************************************************

MAY IT PLEASE THE COURT:

NOW INTO COURT COMES defendant, Lakeisha Shanae Adams, as provided under

Louisiana Code of Criminal Procedure Article 822 (B) stating that she has requested portions of

the District Attorney file and has been denied by the District Attorney. Under LSA-C.Cr.P. Art.

822 this court is mandated to hold a contradictory hearing, to wit:

> (B) Additionally, if at any time after sentence is imposed, the defendant seeks the
> production of all or any portion of the district attorney's file in a criminal
> proceeding, the request shall be presented by written motion, which shall be tried
> contradictorily with the district attorney.

In addition to the statutes and articles of the state previously stated, under LSA-C.Cr.P.

Art. 717 has a duty to perform as follows:

> Upon motion of a defendant, a court shall order the district attorney or the
> appropriate law enforcement agency to furnish to the defendant a copy of any
> record of his criminal arrests and convictions that is in their possession of custody.

The information sought is the district attorney file in its entirety.

This information constitutes "Brady" evidence in the criminal trial of the defendant.

Under the above law it is therefore mandated that a contradictory hearing be held.

Respectfully submitted,

Lakeisha Shanae Adams#551775
Louisiana Correctional
Institute for Women
Post Office Box 26
St. Gabriel, LA 70776

Exhibit 18

22ND JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

LAKEISHA SHANAE ADAMS

DOCKET NO: 06 CRI 94104

FILED: _____

CLERK: _____

**************************************************************************

**ORDER**

**************************************************************************

Considering the above and foregoing motion as applicable under LSA-C.Cr.P. Art. 822 and LSA-C.Cr.P. Art. 717:

**IT IS ORDERED** that the District Attorney of Washington Parish show cause at a "contradictory hearing" on the _____ day of _____ of 20____, at _____ A.M./P.M. as to why he has not produced the portion of the district attorney's files as in the above motion.

**IT IS FURTHER ORDERED,** that the Warden, and/or his designee at the Louisiana Correctional Institute for Women, St. Gabriel, Louisiana, produce the body of Lakeisha Shanae Adams at the above hearing.

**THUS DONE AND SIGNED** this _____ day of _____, 20____.

_____
Judge

PLEASE SERVE:

Walter P. Reed
District Attorney Washington Parish
Justice Center
701 N. Columbia St.
Covington, LA 70433

Lakeisha Shanae Adams #551775
Louisiana Correctional Institute For Women
Post Office Box 26
St. Gabriel, LA 70776

22ND JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

STATE OF LOUISIANA        DOCKET NO: 06-CRI 94304

VERSUS        FILED: _____

LAKEISHA SHANAE ADAMS        CLERK: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION FOR THE PRODUCTION OF DOCUMENTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAY IT PLEASE THE COURT:

NOW INTO COURT COMES, Lakeisha Shanae Adams, in proper person, hereinafter referred to as Adams or Petitioner, who respectfully requests this Honorable Court to grant her Motion for the Production of Documents in regards to the criminal proceedings held in the above entitled case.

### JURISDICTION

Jurisdiction is proper in this court, pursuant to LSA-R.S. 44:3 et al. to make available to petitioner all public records and documents pertaining to this instant matter.

### STATEMENT OF CASE

Adams was arrest December 5, 2005 Adams was indicted for second-degree murder of her infant son on January 18, 2006. All pre-trial hearings along with a competency hearing were held and Adams was determined not to be competent to proceed to trial, at which time Adams was remanded to the Feliciana Forensic Facility for treatment. After another competency hearing on April 3, 2008, Adams was competent to go to trial.  The trial started March 9, 2009, where the jury convicted Petitioner for a violation of LSA-R.S. 14:30.1, on March 14, 2009, and she was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on March 28, 2009.

Petitioner is preparing to file her Application for Post Conviction Relief and can only do so if she is provided with the following documents:

1. Pre-trial hearing transcripts to include the competency hearings:
   January 25, 2006, June 1, 2006, January 31, 2007, April 3, 2008, June 4, 2008, August 11, 2008.
2. The complete trial transcript begin with the Jury Voir Dire, Opening Statements, Trial, Closing Arguments, Jury Instructions, Verdict:
   Starting from March 9, 2009, through March 14, 2009.
3. Sentencing Transcripts on March 28, 2009.
4. Bill of indictment.
5. Minutes.
6. Documents committing Adams into custody.

Exhibit 19

Petitioner claims that there were a number of errors made during the proceedings against her that were prejudicial to her defense. Following is a list of claims that Adams intents to claim on her application for post conviction relief: Adams was not competent and did not know right from wrong when she placed her son in the dryer. There was insufficient evidence to support the conviction and sentence. The record is incomplete. Adams was denied effective assistance of counsels due to their poor performance. Defense counsel should have investigated, prepared and presented a defense of Battered Woman's Syndrome, which would have been supported by, Adams mental health history and medical records.  Counsels failed to proper argue motion to suppress by not asserting the effect of her mental condition and/or the interrogation techniques on the voluntariness of the statement. These claims violated petitioner's constitutional rights under the **Fourth, Fifth, Sixth, Eighth**, and **Fourteenth Amendments** as guaranteed by the United States Constitution and the Louisiana Constitution. There are numerous other claims that Adams will raise and prove the merits of the claims once she has the opportunity to review the transcripts and other documents.

Petitioner does not and cannot remember all these errors accurately without a review of the requested documents. There are no alternative documents or records available to the petitioner, which could fulfill the same function as the requested documents. Petitioner claims that she needs all the aforementioned documents in order to properly pursue her claims through post conviction procedures. In addition, jailhouse lawyer cannot properly prepare Adams pleadings without said requested documents.

United States Supreme Court in *Griffin v. People of State of Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, (1956) states that indigent persons appealing from their conviction in a State court are entitled to have a full transcript of the proceedings furnished them at state expense and that denial of such rights are violation of the due process and equal protection clauses of the **Fourteenth Amendment** to the Federal Constitution. *Griffin*, further states,

> "Because we recognize that adequate and effective appellate review is impossible without a transcript or adequate substitute, we held that states must provide trial records to inmates unable to pay for them."

Louisiana Legislative Act 653, in accordance with **LSA-C.Cr.P. 930.3**, provides that when procuring copies of public records, there must be a showing of constitutional violations.

The Louisiana Constitution **Art. 1, § 19**, provides in pertinent part,

> "No person shall be subjected to imprisonment of forfeiture of right of property without the right to judicial review based upon a complete record of all the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law."

In order for the petitioner to litigate her claim pursuant to the Louisiana Constitution **Art. 1, § 19**, a true copy of the aforementioned documents must be made available to petitioner

without cost for her to effectively challenge her conviction. Petitioner has shown that she has remain indigent; therefore, said documents should be made available without cost or delay pursuant to the Louisiana Constitution, Art. 12, § 3, which provides in pertinent part,

> *"No person shall be denied the right to observe the deliberations of public bodies and examine public records except in cases established by law."*

Petitioner has shown this Honorable Court that the documents requested are in fact "public records", and are not exempt by law, and in order to have full access to the courts in litigating her claim, said documents must be made available to the petitioner by the Clerk of Court of the aforementioned Judicial Court.

Petitioner has requested these documents from her trial attorneys, Mr. Allen Myles and Mr. Barry Bolton. In addition, petitioner even requested these documents from her appellant counsel Margaret S. Sollars to no avail. Petitioner is not school in law and she is forced to utilize jailhouse lawyers that are not schooled in law. Absent the documents requested, petitioner has no means of fully challenging her convictions and sentences. Furthermore, petitioner would be unconstitutionally barred from litigating her claims in a court of law, therefore it becomes the statutory duty of the clerk of court to provide petitioner with the verbatim copies of the documents requested.

## CONCLUSION

**THEREFORE**, petitioner prays that this Honorable Court grant her motion for production of documents for she has demonstrated to this Court the particularized need for the following requested documents:

1. Pre-trial hearing transcripts to include the competency hearings:
   January 25, 2006, June 1, 2006, January 31, 2007, April 3, 2008, June 4, 2008, August 11, 2008
2. The complete trial transcript begin with the Jury Voir Dire, Opening Statements, Trial, Closing Arguments, Jury Instructions, Verdict:
   Starting from March 9, 2009, through March 14, 2009.
3. Sentencing Transcripts on March 28, 2009.
4. Bill of indictment.
5. Minutes
6. Documents committing Adams into custody

Submitted this 31st day of January 2011.

Respectfully submitted,

Lakeisha Shanae Adams # 551775
Petitioner, Pro Se
Louisiana Correctional
Institute for Women
Post Office Box 26
St. Gabriel, LA 70776

22ND JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

| | |
|---|---|
| STATE OF LOUISIANA | DOCKET NO: 06 CRI 94104 |
| VERSUS | FILED: _____ |
| LAKEISHA SHANAE ADAMS | CLERK: _____ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONSIDERING THE FOREGOING:

IT IS HEREBY ORDERED that the Court Reporter and or the Clerk of Court, for the

Twenty-Second Judicial District Court, in and for the Parish of Washington, State of Louisiana,

produce and furnish petitioner with a true and correct copy of the following requested

documents:

1. Pre-trial hearing transcripts to include the competency hearings:
   January 25, 2006, June 1, 2006, January 31, 2007, April 3, 2008, June 4, 2008,
   August 17, 2008.
2. The complete trial transcript begin with the Jury Voir Dire, Opening Statements,
   Trial, Closing Arguments, Jury Instructions, Verdict:
   Starting from March 9, 2009, through March 14, 2009.
3. Sentencing Transcripts on March 28, 2009.
4. Bill of indictment.
5. Minutes.
6. Documents committing Adams into custody.

IT IS FURTHER ORDERED that the requested documents named herein that the same

be mailed by United States Certified Mail to the petitioner, Lakeisha Shanae Admas, # 551775,

at the Louisiana Correctional Institute for Women, Post Office Box 26, St. Gabriel, Louisiana,

70776; to be done no later than 20 days after the receipt of this Order.

SO ORDERED on this _17_ day of _March_ , 20 _11_.

_____
Judge

# Johnny D. Crain

Clerk of Court and Ex-Officio Recorder
22nd Judicial District Court
Washington Parish

---

P .O. Box 607 • Franklinton, LA 70438          Franklinton (985) 839-4663 • Bogalusa (985) 732-7189

Date:  June 11, 2012

Lakeisha S Adams #551775
LCIW
P.O. Box 26
St. Gabriel, LA  70776

Re:  06 CR1 94104
     Cost for Transcripts

Ms. Adams,

Please be advised at the rate of $1.00/page the approximate cost
for your trial transcripts would be $1200.

Our office does not have access to the District Attorney File so I
am unable to advise as to associated costs with that matter.

Thank you.

Sincerely,

M Watson,
Dpy Clerk of Court

A PROVEN ADMINISTRATOR - A GOOD LISTENER

PUBLIC RECORDS REQUEST FORM

RECEIVED - FILED
JOHN P. CRAIN-CLERK
WASHINGTON PARISH

2012 OCT 24 AM 10 20

DY. CLERK

DOCKET NUMBER: 06-CRI-94104

DATE: October 17, 2012

NAME OF INMATE REQUESTING RECORDS: La'Keisha Shanae Adams

DATE OF BIRTH: June 17, 1987

SOCIAL SECURITY NUMBER:

CURRENT MAILING ADDRESS: La'Keisha Adams #551775, Louisiana Correctional Institute for Women, Post Office Box 26, St. Gabriel, LA 70776

 

     I am presently in the custody of the Louisiana Department of Public Safety and Corrections. I am serving a life sentence imposed upon me on the date of March 25, 2009 by Judge Burris of the 22nd Judicial District Court, Washington Parish. After conviction and sentence:

\_\_\_\_\_ I did not appeal and the delays for appeal have expired.

☑ I did appeal to the First Circuit Court of Appeals and my conviction and sentence were affirmed on July 17, 2010.

☑ I then appealed or applied for writs to the Louisiana Supreme Court and my Conviction and sentence were affirmed on January 7, 2011.

☑ I then filed an Application for Post-Conviction relief to the 22nd Judicial District Court and it was denied on February 27, 2012.

☑ I then applied a supervisory writ to the First Circuit Court of appeals and was denied on June 4, 2012.

☑ I am currently at the Supreme Court level with my PCR.

**AT ALL LEVELS, I HAVE ASKED TO RESERVE MY RIGHT TO FILE SUPPLEMENTAL POST-CONVICTIONS WHEN I RECEIVED AND REVIEWED MY RECORDS RELATING TO THIS CASE.**

A True Copy of Original
This_____
Dy. Clerk of Court

Exhibit 20

I certify that my request for copies of relevant portions of the requested public record is limited to the grounds upon which I may file for post-conviction relief.

Specifically, if I am furnished a copy of relevant portions of the requested records, I believe I can establish a ground for post-conviction relief as follows:

A. Ineffective assistance of counsel violating Ms. Adams' violating her right as provided by the Sixth Amendment of the United States Constitution.

B. Violation of Ms. Adams' right to a fundamentally fair and impartial trial as guaranteed by the Sixth Amendment of the United States Constitution.

C. Violation of Ms. Adams' right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

D. Several other violations involving ineffective assistance of counsel concerning counsel's failure to allow Ms. Adams to assist in her own defense, testify on her own behalf, and failure to investigate as guaranteed by the Sixth Amendment of the United States Constitution.

E. Ineffective assistance of counsel by failing to object to introduction of videotaped confession on the correct grounds; he pled Ms. Adams *Not Guilty and Not Guilty by Reason of Insanity* and did not object to the statement on the grounds of incompetency.

**At this time, I am requesting the following information:**

1. Trial and Sentencing Transcripts.

2. Voir Dire

3. Bill of Indictment

4. Minutes relating or pertaining in any way to above stated case.

I certify that the above information is true and correct, signed this 17ᵗʰ day of Oct. 17, , 2012.

Denied. No particularized need shown.

La'Keisha Adams #490684

# LOUISIANA APPELLATE PROJECT

Providing appellate defense in felony, non-capital cases

May 11, 2010

James H. Looney
Executive Director
P. O. Box 337
Covington, LA 70434-0337
(985) 387-6111

Gwendolyn K. Brown
Regions 1 & 5 Supervisor
P. O. Box 64962
Baton Rouge, LA 70896-4962
Voice & Fax (225) 922-9570

Margaret Smith Sollars
Appellate Attorney
513 Country Club Blvd
Thibodaux, LA 70301-3711
(985) 446-2818

Ms. Lakeisha Adams, #551775
L.C.I.W.
P.O. Box 26
St. Gabriel, Louisiana 70776

Dear Ms. Adams,

Enclosed is the decision from the appellate court concerning your conviction. It arrived yesterday. After looking thoroughly at the judgment and the brief I wrote, I do not think that the Supreme Court is likely to grant certiorari on your conviction. The facts simply are not enough to gain a reversal. For that reason, I have decided not to seek further review with the Supreme Court.

You have two choices at this time. You can apply pro se to the Supreme Court and any writ application should be filed within thirty days from the date of judgment (May 7, 2010). You can also apply for post-conviction relief. You have two years from the date of this judgment to apply for post conviction relief if you decide not to appeal further. You should talk to someone who would be able to advise you and show you what must be done. Also, please consider this letter as your notice for the time limits to seek post-conviction relief.

I also need to inform you that federal law mandates that any habeas corpus proceeding to contest this conviction must be filed within one year after the final decision on appeal, excluding the time any State post conviction relief application is pending.

My decision not to appeal further was based in part on the failure of your trial attorney to contest the motion to suppress your statement based upon insanity at the time of your son's death. I believe this issue can be raised on post conviction relief by stating that you received ineffective assistance of counsel. If you read the judgment, this part of the issue was effectively dismissed by the appellate court because it was not raised at the time of the suppression hearing. I think that you should stress that the trial court found you incompetent afterwards, and only after a year of treatment were you found competent to stand trial. Also, your expert witness confirmed this information.

Yours was a case that I debated with myself for two days before deciding what to recommend, particularly because it was a split decision. Normally I seek a writ to the Supreme Court when there is a split decision. However,

Exhibit 21

I feel that your best chance for a reversal is to seek post conviction relief without a denial from the Supreme Court, something that I feel would almost be certain. This would give only added weight to the appellate decision and make post conviction relief that much harder to gain. I believe that if your trial attorney had pushed the insanity issue at the time of the suppression of your statement hearing, this issue would have been preserved on appeal and you might have prevailed. Without your statements to the police, the verdict may have been different.

I suggest that you talk to the paralegals at L.C.I.W. and use this information to seek post conviction relief. If you have any questions, feel free to contact me and I will offer any advice that I think may be helpful. I am sorry that this news could not have been better.

Sincerely,

Margaret Sollars

# LOUISIANA APPELLATE PROJECT

Providing appellate defense in felony, non-capital cases

January 20, 2011

Ms. Lakeisha Adams, #551775
L.C.I.W.
P.O. Box 26
St. Gabriel, Louisiana 70776

James H. Looney
Executive Director
P. O. Box 3340
Covington, LA 70434-3340
(985) 892-1707

Gwendolyn K. Brown
Regions 1 & 5 Supervisor
P. O. Box 64962
Baton Rouge, LA 70896-4962
Voice & Fax (225) 922-9570

Margaret Smith Sollars
Appellate Attorney
513 Country Club Blvd
Thibodaux, LA 70301-3711
(985) 446-2618

Dear Ms. Adams,

My file consists of the correspondence between us, the brief I filed, the State's brief, and the judgment. I am enclosing a copy of the State's brief, the only document I have that you requested. I also called the First Circuit yesterday and confirmed again that no written reasons were submitted by Judge Hughes.

Your trial attorney probably has some of the information you are seeking. I worked from the appellate record and had to return it when your brief was filed. Therefore, I have no transcripts, copies of motions, police reports, etc. I doubt that your trial attorney has any transcripts, but he may have some other documents that could be helpful.

I certainly wish you the best of luck.

Sincerely,

Margaret Sollars

Exhibit 22



# ADAMS' TIME LINE

**12-5-05**
- Arrest Date
- Date of Confession

**06-01-06**
- Motion for Competency Hearing Granted

**01-31-07**
- Declared Incompetent
- Did not understand legal rights
- Was ordered to take Legal Rights Classes
- Remanded to Feliciana Forensic Facility

**06-04-08**
- The Court found Adams competent to stand trial
- Her release from Feliciana Forensic was ordered

**08-11-08**
- Adams waived her right to a jury trial and requested a trial by judge
- This motion was granted by the court and a court date was set to proceed with bench trial

**12-8-08**
- Defense Attorney Bolton requested a Trial by Jury in the absence of Adams

**03-09-09**
- Jury selection began
- When Adams attempted to ask Bolton why they were selecting a jury, she was told to be quiet.
- Trial began

If Adams' lawyer requested a competency hearing in June of 2006, she was declared incompetent to stand trial on 01-31-07, and the Judge found that she did not understand her legal rights until eighteen months later, then how could they demand that she understood her rights and was competent to waive those rights in order to make a confession when she was arrested?

Adams took Legal Rights classes and underwent treatment for her major depression, post-traumatic stress syndrome, anxiety, postpartum depression, and possible paranoia for eighteen months to ensure that she understood her rights and was competent to stand trial, then made an intelligent decision to waive her rights to a trial by jury, and was ignored by her own defense counsel and the trial court.

La'Keisha Adams 551775
LCIW
P.O. Box 26
St. Gabriel, LA 70776



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE
Label 107R, February 2006   www.usps.com

Loretta G. Whyte Clerk
United States District Court
Eastern District of Louisiana
C151 Hale Boggs Federal Bldg
500 Poydras Street
New Orleans, LA 70130



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE
Label 107R, February 2006   www.usps.com

US POSTAGE
$06.00
ZIP 70776
04 L112 1455